[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1075 
Esther M. Kaufman ("the wife") sued Charles T. Kaufman ("the husband") for a divorce, seeking a division of the parties' marital property and an award of periodic alimony. Both parties sought pendente lite possession of the marital residence, and the husband filed several pendente lite motions pertaining to his allegations that the wife had removed certain property from the marital residence. The trial court conducted an ore tenus hearing. On June 3, 2004, the trial court entered a judgment in which it divorced the parties, fashioned a property division, and awarded the wife periodic alimony for a period of five years.
On July 1, 2004, the husband filed a motion seeking to have the wife held in contempt. The wife filed a postjudgment motion on July 6, 2004. The trial court entered an order denying the wife's postjudgment motion, and later, on September 22, 2004, it entered an order ("the contempt order") in which it found the wife in contempt and imposed sanctions against her. The wife moved to set aside the September 22, 2004, contempt order, but, after conducting a hearing, the trial court denied that motion. The wife filed timely *Page 1076 
notices of appeal with regard to the divorce judgment and the contempt order. Those appeals have been consolidated.
The record reveals the following pertinent facts. At the time of the hearing, the parties had been married for more than 33 years; no children were born of the parties' marriage. The husband was 87 years old and the wife was 66 years old. The husband had had two previous marriages and had three surviving children from those marriages. The husband has a number of health problems, including diabetes and congestive heart failure. The wife is in relatively good health.
The wife is a native of Panama;[1] the parties met while the husband was working for the United States government in the Panama Canal zone.[2] The wife had two minor children at the time the parties married in 1971. The husband retired from his employment with the United States government in 1975, and the parties moved to Alabama. The parties raised the wife's two children, and the husband's children from his previous marriages visited the parties. The wife testified that she had no assets when she married the husband, and she stated that at the time they married the husband had no financial accounts of which she was aware.
At the time of the hearing, the wife was receiving approximately $400 per month in Social Security income, as well as $166 per month from a retirement account from her previous employment in Panama. The record does not indicate the amount of the husband's monthly retirement income from Social Security, the amount of his United States government retirement benefits, or the amount of any retirement income from his private employers.
The husband obtained new employment after the parties moved to Alabama, and the record indicates that the husband's income was used to support the family. The wife worked various jobs, mostly cleaning houses, after the parties moved to Alabama. The wife testified that she used the income from her employment to purchase items for the house and household.
The parties separated in late September 2003, shortly after the husband withdrew $44,600 from the parties' joint checking account and gave it to his daughter. The wife testified that the husband had given another check for $10,000 to his daughter and informed the wife that it was none of her business what he did with the money. The wife also testified that at the time she questioned him about the withdrawal from the couple's joint checking account, the husband threatened to "twist her neck."
After the husband gave the $44,600 to his daughter, the wife withdrew amounts from the parties' bank accounts. The testimony surrounding the wife's withdrawals from the bank accounts was somewhat vague and confusing. Our review of the record indicates that after the husband withdrew the $44,600, the wife withdrew $5,000 from each of two checking accounts. The wife also withdrew additional amounts from another bank account;[3] she testified that she withdrew $9,000 to repay a loan she had obtained from her daughter and that she did not recall why she had withdrawn $8,000 from an account in the month before the parties' separation.
The evidence in the record indicates that each of the parties has given generous *Page 1077 
gifts or loans to various family members during the course of the parties' marriage. The loans to the family members were not formalized in writing.
Also, the husband presented the testimony of Jack Lawrence, an accountant who had examined two bank accounts and was testifying "as a favor" to the husband's daughter. The record indicates that one of the accounts Lawrence examined was listed solely in the wife's name, but the record does not specify the name or names on the other account. Lawrence testified that since May 2000 more than $90,000 had been deposited and withdrawn from those accounts. The husband did not submit into evidence any supporting documentation, so there is no evidence regarding the disposition of those funds; that supporting documentation was in the possession of the husband's daughter. Lawrence testified that some of the amounts withdrawn were in amounts as large as $7,000 to $8,000; he identified some checks for those amounts as being paid to an automobile dealership, but he was unable to specify to whom the other large checks were paid.
The husband submitted into evidence a list of the parties' assets and his valuations of those assets; that list is hereinafter referred to as "Exhibit 1." The wife testified that one account listed on Exhibit 1 no longer existed; that account, which is listed as containing approximately $8,000, was held in the names of the wife and her grandson. Also, the wife testified that the parties purchased her vehicle in 2003 for $38,000; the value attributed to that vehicle on Exhibit 1 is $45,000. However, the wife did not dispute the valuation of any of the assets listed on Exhibit 1.
After the parties separated, the husband filed several motions expressing his desire to have pendente lite possession of the marital residence and pertaining to the wife's removal of certain items from the marital residence. During the pendency of this matter, the trial court ordered the wife to return certain property she had removed from the residence; the record indicates that the wife did not comply with that order. The trial court also ordered both parties to refrain from removing any other items from the marital residence pending the entry of a final divorce judgment.
In its June 3, 2004, divorce judgment, the trial court awarded the wife four accounts held in the name of the wife or in the names of the wife and one of her children. The total value of those accounts was approximately $34,700. The trial court awarded all remaining accounts to the husband; the total value of those accounts was approximately $362,510. In addition, the trial court awarded the husband the right to collect on three loans made to the parties' family members; the outstanding balances on those loans totaled approximately $100,000. The wife was awarded the right to collect on a $20,817.42 loan the parties had made to the wife's sister.
The divorce judgment indicates that the trial court valued the parties' marital residence and furnishings at $146,000. In paragraph 8 of its divorce judgment, the trial court awarded the husband the option of either selling the residence and its contents and dividing the proceeds equally with the wife or of purchasing the wife's interest in those assets for $73,000. However, in paragraph 12 of the divorce judgment, the trial court ordered that the furnishings in the residence be sold and the proceeds divided equally between the parties. That conflict in the divorce judgment is addressed later in this opinion.
In addition to the foregoing, in its June 3, 2004, divorce judgment, the trial court awarded the parties the vehicles in their *Page 1078 
possession, ordered the husband to pay the wife $500 per month in periodic alimony for a period of five years, and ordered the husband to pay $1,500 toward the wife's attorney fee.
On July 1, 2004, the husband filed his motion seeking to have the wife held in contempt for removing items from the marital residence; the husband submitted an exhibit indicating that the replacement cost[4] of the items he contended were removed from the marital residence totaled $27,985.46. On September 22, 2004, the trial court entered its contempt order finding the wife in contempt and ordering her to return all of the items listed on the contempt exhibit or to pay the husband $27,985.46 for those items.
In her October 20, 2004, motion seeking to set aside the contempt order, the wife alleged that the husband had failed to pay a filing fee in support of his contempt motion and that she had received no notice of the trial court's hearing on the contempt motion. In that motion and during the hearing on the wife's motion to set aside the contempt order, the wife's attorney maintained that she had participated by telephone in a hearing on the wife's postjudgment motion regarding the divorce judgment, and that, after she had terminated that telephone call, the husband's contempt motion was discussed and considered by the husband's attorney and the trial court. The husband's attorney agreed that the contempt motion and the evidence presented in support of that motion was presented to the trial court after the wife's attorney hung up from the telephone call. The husband's attorney argued that the wife failed to present evidence in opposition to the motion for contempt and that she and her attorney were not present for the hearing on that motion; however, it is clear from the record and undisputed that the wife did not receive notice of the hearing on the contempt motion.
 Property Division and Alimony Award (Case no. 2040100)
The wife argues that the trial court erred in fashioning its property division and alimony award. In her brief on appeal, the wife asserts that she was awarded only 14% of the parties' marital property. However, the wife omitted from her calculation of the property awarded to each party the value of the parties' vehicles. This court's calculation of the assets awarded to the parties includes the valuation of those vehicles as set forth on Exhibit 1. The inclusion of those assets indicates that the wife was awarded approximately 23% of the parties' marital estate.
We note that as part of her argument on this issue the wife argues that the trial court improperly considered the parties' settlement negotiations in reaching its property-division and alimony awards. Rule 408, Ala. R. Evid., provides that evidence pertaining to the parties' efforts to settle or compromise is not admissible.
 "The Alabama law regarding the admissibility of settlement communications between parties is well established. The general rule is that offers of compromise by one party to another in a civil action, whether before or after the litigation is begun, is inadmissible. Glaze v. Glaze, 477 So.2d 435
(Ala.Civ.App. 1985). Alabama courts also recognize that conversations in connection with settlement negotiations are inadmissible. Chandler v. Owens, 235 Ala. 356, 179 So. 256 (1938). *Page 1079 
Negotiations looking to a compromise of controversies are privileged and inadmissible. See, Ford v. Bradford, 212 Ala. 515, 103 So. 549 (1925). Likewise, offers to perform that are conditional amount to mere efforts to settle a pending claim and are thus inadmissible. Yeager v. Hurt, 433 So.2d 1176 (Ala. 1983)."
Super Valu Stores, Inc. v. Peterson, 506 So.2d 317, 321 (Ala. 1987).
The record tends to support the wife's argument on this issue. During the November 17, 2004, hearing on the wife's motion seeking the reconsideration of the imposition of sanctions against her, the trial court made the following statement pertaining to the parties' settlement negotiations:
 "[T]he fact of the matter is if you want to know the truth, I was there when the attorneys were trying to settle this case. And you know I was there, Jerry. Of course, I did not participate in the settlement, but I stuck my head in the room enough to know what was going on. And as I understand, the offer that was made to [the wife] was very reasonable, and she turned it down. This is the way I look at things sometimes. Okay. . . ."
Any evidence pertaining to offers of compromise between the parties is not admissible. Super Valu Stores, Inc. v. Peterson,
supra. Our supreme court has explained that "[t]he rationale and public policy underlying the privileged nature of settlement negotiations is the encouragement of extrajudicial settlement of disputes." Super Valu Stores, Inc. v. Peterson,506 So.2d at 324. It is axiomatic that the trial court may not obtain information on its own that would be inadmissable if presented to it by the parties. Therefore, the trial court's consideration of the parties' settlement negotiations in reaching those portions of its judgment pertaining to the property division and alimony award was improper.
The wife also argues that the trial court improperly failed to consider accounts listed in the husband's name or in the name of the husband and one of his children as marital property. The trial court indicated that it would consider as marital assets subject to division only those accounts held jointly by the parties and those accounts to which the wife contended she had contributed financially.[5] In response to the wife's argument on this issue, the husband argues that the assets listed only in his name or in his name jointly with one of his children constitute his "separate estate." We note that § 30-2-51, Ala. Code 1975, allows, under certain circumstances, the property from a spouse's separate estate to be subject to division in a divorce action.
In discussing the difference between marital assets and property solely within one party's separate estate, this court has explained:
 "A party's `"separate estate" is that property over which [he or] she exercises exclusive control and from which the [spouse] . . . derives no benefit by reason of the marital relationship.' Gartman v. Gartman, 376 So.2d 711, 713 (Ala.Civ.App. 1978). The separate estate of the parties in a divorce proceeding includes property owned prior to the marriage and property received by gift or inheritance during the marriage. § 30-2-51(a), Ala. Code 1975. Although *Page 1080 marital property generally includes property purchased or otherwise accumulated by the parties during the marriage, it may also include the property acquired before the marriage or received by gift or inheritance during the marriage when it is used, or income from it is used, regularly for the common benefit of the parties during their marriage. See § 30-2-51(a), Ala. Code 1975."
Nichols v. Nichols, 824 So.2d 797, 802 (Ala.Civ.App. 2001) (emphasis added).
Neither party presented evidence pertaining to the source of the funds listed in Exhibit 1 or regarding whether the accounts were funded by income or assets used for the common benefit of the marriage. The wife testified that neither she nor the husband had any financial accounts at the time they married; the husband did not dispute that testimony. The husband's attorney conceded that the assets listed in Exhibit 1 were accumulated during the parties' 33-year marriage.
The determination whether property is marital property or belongs to the separate estate of one of the parties is a matter generally within the trial court's discretion. Alston v.Alston, 555 So.2d 1128 (Ala.Civ.App. 1989). However, in this case, the evidence indicates that the assets listed in Exhibit 1 were accumulated during the marriage; there is no evidence indicating that any of those assets were received by gift or by inheritance. Thus, the assets listed in Exhibit 1, including the financial accounts in which the wife claimed an interest, were marital assets subject to the property division.
Whether assets are within a party's separate estate or, as in this case, the assets are marital property, the division of property in a divorce action is a matter for the trial court's discretion. In examining whether the trial court's property division amounts to an abuse of its discretion, the proper question to be resolved is whether the property division was equitable under the facts of the case. See Golden v. Golden,681 So.2d 605 (Ala.Civ.App. 1996).
 "A trial court's award of alimony and division of property following an ore tenus presentation of the evidence is presumed correct. Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App. 1993). On appeal, the issues of alimony and property division must be considered together. The trial court's judgment on those issues will not be reversed absent a finding that the judgment is so unsupported by the evidence as to amount to an abuse of discretion. Id. The property division need not be equal, but it must be equitable. Id. The factors the trial court should consider in dividing the marital property include `the ages and health of the parties, the length of their marriage, their station in life and their future prospects, their standard of living and each party's potential for maintaining that standard after the divorce, the value and type of property they own, and the source of their common property.' Covington v. Covington, 675 So.2d 436, 438 (Ala.Civ.App. 1996)."
Courtright v. Courtright, 757 So.2d 453, 456 (Ala.Civ.App. 2000).
In this case, the parties were married for 33 years. They are both at or nearing retirement age and are receiving retirement income. The trial court's comments made during the course of the hearing indicate that it considered primarily the husband's financial contributions to the marriage and placed little value on the wife's contributions, both monetary or otherwise, to the marriage. The trial court appears to have improperly determined that the assets listed in Exhibit 1 were not *Page 1081 
all marital assets. In addition, we note that the trial court improperly considered the parties' settlement negotiations in reaching its division of the parties' marital property and in its alimony award. The trial court's property award disproportionately favors the husband, and, given the foregoing and the length of the parties' marriage, we must conclude that the trial court abused its discretion in reaching its property division and alimony award. We reverse and remand for the trial court to enter a judgment fashioning an equitable property division and alimony award.
As noted earlier in this opinion, the June 3, 2004, divorce judgment contains a provision offering the husband an election between purchasing from the wife her interest in the marital residence and its contents or selling the residence and its contents, as well as a provision requiring that the furnishings be sold and the proceeds divided between the parties. A November 17, 2004, entry on the case action summary indicates that the trial court, among other things, purported to delete the provision requiring the sale of the furnishings. However, because more than 30 days had passed since the entry of the divorce judgment and also because the trial court had already denied the wife's postjudgment motion, the trial court lacked jurisdiction to enter that part of its November 17, 2004, order. Therefore, that order was a nullity and had no effect. See McGiboney v.McGiboney, 679 So.2d 1066, 1068 (Ala.Civ.App. 1995) (property-division portion of a divorce judgment is not modifiable after 30 days of the entry of the divorce judgment); and Reaves v. Reaves, 883 So.2d 693, 695 (Ala.Civ.App. 2003) (trial court's purported amendment of a divorce judgment after it had already denied a postjudgment motion was a nullity).
 Contempt Order (Case no. 2040276)
The wife also challenges the trial court's September 22, 2004, order finding her in contempt and imposing sanctions for her purported violation of its order prohibiting the parties from removing property from their marital residence during the pendency of this matter. The wife argues (and argued before the trial court) that because the husband did not pay a filing fee when he filed his July 1, 2004, motion for the imposition of sanctions, he did not properly invoke the jurisdiction of the trial court with regard to that issue. The husband does not dispute that he did not pay a filing fee in support of his July 1, 2004, motion. The husband responds to the wife's argument on this issue by maintaining that the payment of a filing fee was unnecessary because, he contends, his July 1, 2004, motion was a postjudgment motion filed pursuant to Rule 59, Ala. R. Civ. P.
The husband is correct that his July 1, 2004, motion for the imposition of sanctions was filed within the 30 days of the entry of the June 3, 2004, divorce judgment, which is the limit on when he could file a postjudgment motion pursuant to Rule 59. However, the substance of a motion governs the courts' interpretation of that motion. Evans v. Waddell, 689 So.2d 23, 26 (Ala. 1997); and Ex parte Alfa Mut. Gen. Ins. Co., 684 So.2d 1281, 1282
(Ala. 1996). The husband's July 1, 2004, motion did not seek the modification of the trial court's divorce judgment: rather, it asked that the court impose sanctions against the wife for purportedly removing items from the marital residence in violation of an order of the trial court; the husband also sought an award of an attorney fee in connection with the motion. Therefore, we disagree with the husband's argument that his July 1, 2004, motion was in the nature of a postjudgment motion made pursuant to Rule 59, Ala. R. Civ. P. *Page 1082 
A motion or petition seeking the imposition of sanctions based on a finding of contempt initiates an independent proceeding that requires the payment of a filing fee. Opinion of the Clerk No.25, 381 So.2d 58 (Ala. 1980); see also Wilcoxen v. Wilcoxen,907 So.2d 447 (Ala.Civ.App. 2005). In Wilcoxen v. Wilcoxen,
supra, the trial court entered a judgment divorcing the parties. The husband filed a contempt petition during the time the wife's postjudgment motion was pending. The trial court denied the wife's postjudgment motion and scheduled a hearing on the husband's contempt petition; the wife appealed the divorce judgment. This court noted that the pendency of the husband's contempt petition, along with another contempt petition filed after the entry of the postjudgment order, did not affect the finality of the divorce judgment from which the wife appealed because the contempt petition initiated a "`separate and independent proceeding' from the underlying action." Wilcoxen v.Wilcoxen, 907 So.2d at 449 n. 1 (quoting Opinion of the ClerkNo. 25, 381 So.2d at 59).
In this case, the husband filed his petition seeking the imposition of sanctions based on the wife's allegedly contemptuous conduct after the entry of the final judgment of divorce. A motion or petition seeking the imposition of sanctions based on a finding of contempt initiates an independent proceeding that requires the payment of a filing fee. Opinion ofthe Clerk No. 25, supra; see also Wilcoxen v. Wilcoxen, supra. The payment of a filing fee is a jurisdictional act. Farmer v.Farmer, 842 So.2d 679, 681 (Ala.Civ.App. 2002). The husband did not pay a filing fee in support of his July 1, 2004, motion.[6] Therefore, the husband did not properly invoke the jurisdiction of the trial court, and its September 22, 2004, contempt order is void for want of subject-matter jurisdiction.
 "`A void judgment will not support an appeal.' Carter v. Hilliard, 838 So.2d 1062, 1064
(Ala.Civ.App. 2002) (citing Jones v. Sears, Roebuck Co., 342 So.2d 16, 17 (Ala. 1977)). Judgments entered without subject-matter jurisdiction can `be set aside at any time as void, either on direct or on collateral attack.' International Longshoremen's Ass'n v. Davis, 470 So.2d 1215, 1217 (Ala. 1985), aff'd, 476 U.S. 380 (1986)."
Alves v. Board of Educ. for the City of Guntersville,922 So.2d 129, 134 (Ala.Civ.App. 2005). Accordingly, we dismiss the wife's appeal from the September 22, 2004, contempt order and direct the trial court to set aside that order.
The parties requests for attorney fees are denied.
2040100 — REVERSED AND REMANDED.
2040276 — DISMISSED.
CRAWLEY, P.J., and PITTMAN and BRYAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.
[1] We note that the wife testified at the trial with the assistance of an interpreter.
[2] The record does not indicate whether the wife is now a United States citizen.
[3] The record does not clearly indicate the names on the accounts from which the additional amounts were removed.
[4] We are not asked to determine whether the replacement cost was the proper measure of damages, and we do not reach that issue.
[5] Among the trial court's statements were the following: "Well, I'll consider any joint account as far as division of property," "if [the wife] is claiming [an interest in one of the accounts], then [s]he needs to show whether or not she made any contributions to it," and "I am getting a feeling that he contributed most of the money during the marriage."
[6] The husband concedes in his brief on appeal that he did not pay a filing fee. Further, out of an abundance of caution, the clerk of this court contacted the clerk of the trial court and verified that no filing fee was paid in support of the husband's July 1, 2004, motion. *Page 1083