964 So.2d 678 (2007)
Deborah Diane CUNNINGHAM
v.
Randy Paul CUNNINGHAM.
No. 2060248.
Court of Civil Appeals of Alabama.
April 20, 2007.
*679 Mose Lee Sudduth, Jr., Vernon, for appellant.
Dale Lawrence of Holder, Moore, Lawrence & Langley, P.C., Fayette, for appellee.
THOMPSON, Presiding Judge.
This is the second time these parties have been before this court. Deborah Diane Cunningham ("the wife") and Randy Paul Cunningham ("the husband") were divorced by a judgment of the trial court, and the wife appealed the judgment as to the division of property and the award of alimony. A full recitation of the facts of the first appeal is set forth in Cunningham v. Cunningham, 956 So.2d 1157 (Ala.Civ.App.2006)(hereinafter "Cunningham I). Following are the portions of that opinion that are relevant to this appeal:
"The husband testified that he operates the lawn-care and tree-service business that both he and the wife had previously operated and that, in the past, he had listed his business in the telephone directory and in other advertisements as being owned by both the husband and the wife. At the time of the trial, both parties were still listed in the telephone directory and on other advertisements as being co-owners of the business. The husband's testimony and the parties' tax returns from 2003 and 2004 established that the business had gross receipts of approximately $116,000 in 2003 and $102,000 in 2004. After expenses, depreciation, and other costs, however, the parties reported only approximately $13,000 in net income in 2003 and approximately $6,000 in net income in 2004.
"The wife testified that she has been diagnosed with Klippel-Feil Syndrome and scoliosis, that, as a result, she has been declared permanently and totally disabled, and that she receives as her only source of income a Social Security disability check in the amount of $480 per month. She submitted an exhibit to the trial court indicating that her monthly expenses were approximately $2,060, which included $500 per month for rent, $162.50 per month for utilities, $200 per month for food, $469.51 per month for payments on the indebtedness on the 2005 Chevrolet Silverado truck, $250 per month for medication, $77.50 per month for automobile insurance, $130 per month in automobile expenses, $69.40 per month for life insurance, $100 per month for toiletries and other items marked `essentials,' and $100 per month for telephone service.
". . . .
"Both parties also gave testimony and submitted documents outlining the value of the property that they own. The *680 parties testified that, with the exception of a few personal items whose total value was estimated by the parties to be less than $500, most of their property had been acquired after the marriage. The husband valued the parties' house and the real property surrounding the house at $45,000, and the wife valued the house and property at $55,000. The wife valued the business property at $151,200, and the husband valued it at $127,600. The parties did not testify as to the present value of the 2005 Chevrolet Silverado truck, but the wife testified that $23,000 remained due on the truck at the time of the trial. The wife estimated a value of $15,250 for the parties' household property, and the husband valued the same property at $6,520.
". . . .
". . . [T]he wife's primary contention on appeal is that the trial court's property division is inequitable as a whole. The retirement account is only one of the assets to consider in reviewing the overall property division. This court has stated:
"`On appeal, the issues of alimony and property division must be considered together. The trial court's judgment on those issues will not be reversed absent a finding that the judgment is so unsupported by the evidence as to amount to an abuse of discretion. The property division need not be equal, but it must be equitable. The factors the trial court should consider in dividing the marital property include "the ages and health of the parties, the length of their marriage, their station in life and their future prospects, their standard of living and each party's potential for maintaining that standard after the divorce, the value and type of property they own, and the source of their common property." Covington v. Covington, 675 So.2d 436, 438 (Ala.Civ.App.1996).'
"Courtright v. Courtright, 757 So.2d 453, 456 (Ala.Civ.App.2000)(some citations omitted).
"As we have previously mentioned, the parties were married for 22 years. The husband was 45 years old at the time of the trial, and the record indicates that he is in good health. The wife, however, though of comparable age, is permanently disabled due to several severe medical conditions. As to the parties' future prospects, the husband has the ability to work and to earn an income through his business or some other source, but the wife cannot work due to her disability. The wife's only source of income is her disability check in the amount of $480 per month.
"The wife testified that her estimated monthly expenses were in excess of $2,000. The trial court appears to have viewed the wife's expenses as being excessive because the expenses included a $469 truck payment and what the court viewed as an unreasonable $100-permonth telephone bill. However, even if the wife pares down her expenses significantly, those expenses will still greatly outweigh her income, indicating that she will not be able to even remotely maintain the standard of living she enjoyed during the marriage. The husband, however, retains the right to all the income from the business, which the trial court awarded entirely to him.
"In Kaufman v. Kaufman, 934 So.2d 1073, 1081 (Ala.Civ.App.2005), we reversed a divorce judgment after concluding that the judgment `disproportionately favor[ed] the husband.' In that case, the parties had been married for 33 years, were nearing retirement age, and had a limited ability to earn a living in the future. 934 So.2d at 1076-77. The *681 wife was receiving approximately $400 per month in Social Security income and had no way to earn additional income. In making its property division, the trial court in Kaufman awarded the husband approximately 77% of the marital estate and awarded the wife approximately 23% of the marital estate, along with $500 per month in alimony. In reversing that judgment, this court noted that the property division was especially inequitable in light of the length of the parties' marriage. 934 So.2d at 1081. See also Adams v. Adams, 778 So.2d [825,] 827 [(Ala.Civ.App.2000)] (reversing a trial court's judgment containing a division of property that awarded only 16% of the parties' assets to the wife because the division was `so disproportionate as to be inequitable').
"Factoring in the value of the property awarded to the husband and the value of the business equipment and the husband's retirement account and subtracting the $53,000 of business debt, the trial court awarded the husband property with a total value of $104,600 as estimated by the husband and $128,200 as estimated by the wife. As for the wife, the total value of the property she received is $6,520 as estimated by the husband and $15,250 as estimated by the wife. Even accepting the highest estimated value for the property awarded to the wife and the lowest estimated value for the property awarded to the husband, the trial court awarded the husband approximately 87% of the parties' net worth and the wife approximately 13%. Though the trial court found that neither party's valuation of the marital assets bore `indicia of reliability,' we find the division of the martial assets to be inequitable.
"Here, the property division ordered by the trial court combined with the lack of alimony awarded to the wife and the wife's complete disability leaves the wife with insufficient means to meet her basic expenses. Also, the award of approximately 13% of the parties' assets to the wife is on par with the awards held to be inequitable in Kaufman v. Kaufman, supra, and Adams v. Adams, supra. Under these facts and in view of the length of the parties' marriage, we conclude that the trial court's property division and alimony award were inequitable."
Cunningham I, 956 So.2d at 1160-63 (footnotes omitted).
On November 16, 2006, on remand from this court, the trial court entered the following judgment:
"The Alabama Court of Civil Appeals reversed this Court on the issues of property division and denial of alimony and remanded the case for fashioning of an equitable property division and alimony award.
"Regarding the property division, in footnote 2 the Court of Appeals observed that it did not consider the disposition of the house `in [its] analysis of the property division.' This Court has no knowledge of what was before the Court of Civil Appeals; however, the case file shows that the clerk advertised the sale ordered by this Court and conducted the public auction on January 27, 2006. There were two bidders, the highest bid being $32,000. On that same day, the clerk reported the sale to the Court, and on January 31, 2006, this Court entered an Order Confirming Sale. After payment of the costs attendant to the sale, each party received $15,801.75. Attached hereto as `Exhibit A' collectively are copies of the record. As observed by the [Court of Civil Appeals], the . . . husband valued the household goods at $6,250; the . . . wife valued them at *682 $15,250. All of the household goods were awarded to the wife. The average of their divergent valuations is $10,750. [The wife] took the parties' passenger vehicle upon their separation, wrecked it and received $4,450, being all of the insurance proceeds therefrom. The average of the parties' valuation of the business property is $139,400. That is the only property awarded to [the husband] (other that the one-half equity in the house), and at time of trial he owed $53,096 on the property, leaving a balance of $86,304. That is his sole means of making a living.
"Factoring these figures, [the husband] was awarded 77% of the property, and [the wife] was awarded 23% of the property. [The husband] also was saddled with the large debt, and unless he performs, most, if not all of the business equipment will be repossessed. The business equipment represents 84.5% of the property awarded to [the husband]. On the other hand, [the wife] receives $480 per month disability and surely qualifies for Medicaid and perhaps food stamps. The Court of Civil Appeals held that she cannot `even remotely maintain the standard of living she enjoyed during the marriage.' With all due respect, a combined net income of $6,000 (the most recent definitive evidence available to this Court) and living in a residence that brought $32,000 is already living at poverty level. When this Court decided the case, there was not reliable evidence upon which to fashion an alimony amount. This Court is charged now, however, with doing that. The trial court cannot create wealth, but taking the 2004 net income figure of $6,000, the Court will award [the wife] $500 per month periodic alimony, being 100% of the parties' joint income.
"It is, therefore, ordered, adjudged and decreed by the Court that [the husband] pay to [the wife] the sum of $500 per month periodic alimony."
Following the trial court's judgment on remand, the wife filed a postjudgment motion, which the trial court denied on November 21, 2006. The wife timely appealed to this court. On appeal, the wife argues once again that the trial court failed to equitably divide the marital estate and failed to make a proper alimony award.
In Cunningham I, this court did not consider in its analysis of the division of property the amount awarded to each party from the sale of the marital house because the record did not contain evidence regarding the result of that sale. However, on this second appeal the record reveals that the parties' marital house was sold for $32,000, and from the proceeds of that sale, each party was awarded $15,801.75. The trial court did not include the value of the husband's retirement account in its calculation of the estate awarded to him, and it also used an average of the parties' estimates in calculating the percentage of the estate awarded to each. Including now the proceeds from the sale of the marital house, the value of the retirement account, and the business assets, and after subtracting the $53,000 debt related to the business assets, the trial court awarded the husband property with a total value of $120,401.75, as estimated by the husband and $144,001.75 as estimated by the wife. As for the wife, the total value of the property she received, including the household goods, the proceeds from the sale of the marital house, and the insurance proceeds from her automobile accident, is $26,771.75 as estimated by the husband and $35,501.75 as estimated by the wife. The wife has also been awarded $500 per month of alimony by the trial court's judgment on remand. Even taking the maximum estimated value of the property *683 awarded to the wife and the minimum estimated value of the property awarded to the husband, the wife was awarded only approximately 23% of the parties' net worth plus $500 per month in periodic alimony.
Based on these facts and the cases discussed in Cunningham I, Kaufman v. Kaufman, 934 So.2d 1073, 1081 (Ala.Civ. App.2005) and Adams v. Adams, 778 So.2d 825, 827 (Ala.Civ.App.2000), our determination in Cunningham I still stands. Despite the award of alimony to the wife, the property division as a whole remains inequitable. In its judgment on remand, the trial court noted that it "cannot create wealth," and seemed reluctant to divide the business assets that it had awarded exclusively to the husband. The trial court seemed to find relevant that, along with the business assets, the husband is responsible for a large amount of debt related to those assets and that those assets are his sole means of making a living. However, we note that the business debt has been factored into the conclusion that the trial court awarded the husband approximately 77% of the parties' assets, even under the estimate most favorable to the husband.
Although the trial court makes much of the fact that business assets provide the husband with his only source of income, that business, in which both the husband and wife had ownership interests, was also once the sole source of income for the wife. Because the wife is disabled, she has no source of income other than her $480 per month disability check, and she has expenses that she estimates to be in excess of $2,000 per month. Although we understand the trial court's concern in not wanting to divide the business assets that are potentially the only source for the husband's income and alimony payments to the wife, that concern must give way to the need to create an equitable division of the parties' marital estate. Additionally, the husband presented no evidence indicating that he is not employable at a place other than the lawn-care and tree-service business owned by the husband and the wife.
We also note that the trial court may minimize the need to divide the business assets by dividing the parties' marital estate in another manner. See Daniel v. Daniel, 841 So.2d 1246, 1249 (Ala.Civ.App.2002)("Generally, the trial court has wide discretion over the award of alimony and the division of property, and it may use whatever means are reasonable and necessary to divide the parties' property equitably."); Madden v. Madden, 399 So.2d 304, 305 (Ala.Civ.App.1981) ("[A]limony may be awarded as periodic payments, in a lump sum in gross, by an award of specific property or in a combination of any or all of these methods."); and Daniel v. Daniel, 841 So.2d at 1250 ("Alimony in gross is considered `compensation for the [recipient spouse's] inchoate marital rights [and] . . . may also represent a division of the fruits of the marriage where liquidation of a couple's jointly owned assets is not practicable.'") (quoting Hager v. Hager, 293 Ala. 47, 54, 299 So.2d 743, 749 (1974)).
Under the circumstances of this case, namely that the wife is disabled and unable to work, that she receives only $480 per month in income for her disability, that she has expenses in excess of $2,000, that the husband is still capable of working and earning an income to support himself, and that the parties were married for 22 years, the trial court's award of only 23% of the marital estate and $500 per month in alimony to the wife is inequitable. Accordingly we reverse its judgment and remand the case for the trial court to enter an equitable property division and alimony award. We would stress that in remanding *684 the case to the trial court we are not implying that the award necessarily be equal, for, "[a] property division does not have to be equal in order to be equitable based on the particular facts of each case; a determination of what is equitable rests within the sound discretion of the trial court." Harmon v. Harmon, 928 So.2d 295, 298 (Ala.Civ.App.2005). Therefore, we instruct the trial court to enter an equitable award.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, BRYAN, and MOORE, JJ., concur.
THOMAS, J., dissents, without writing.