THOMPSON, Presiding Judge.
Phyllis Liner Culver (“the wife”) appeals from a judgment of the Talladega Circuit Court: (“the trial court”) divorcing her *774 from Johnnie Clifton Culver (“the husband”) and dividing the parties’ property.
The record indicates the following. The parties were married on December 4,1999. The wife is 67 years old and is a high-school graduate with 1 year of college. The wife worked in banking for approximately 30 years and then worked in the respiratory department at a medical center until 2003 or 2004, when she became disabled and was no longer able to work. At the age of 65, the wife began receiving Social Security benefits, which currently total $1,054 per month. The wife suffers from several health issues, including arthritis, thyroid disease, fibromyalgia, osteoporosis, a “bad heart,” and a spot on her lung. She has also had three knee surgeries, including a knee replacement. The wife takes numerous medications that cost a total of $243.20 per month. She pays $104 per month for Medicare coverage and $169 per month for Blue Cross Blue Shield health insurance.
After the parties separated in June 2013, the wife inherited some property when her mother died on February 11, 2014. The wife’s inheritance from her mother’s estate is shared with her brother and includes the mother’s home, a rental home, and three annuities. The wife’s portion of the three annuities totals approximately $144,000, and the wife receives income totaling $1,467 per month from two of those three annuities. The wife testified that she had not received any income from the third annuity because, she said, her brother has control over the account and would give her the funds from that annuity “when he gets ready.” The wife also stated that she did not want to pay taxes on the proceeds of the third annuity. The wife testified that each of the three annuities will expire in 2019 and that, thereafter, her monthly income would be reduced by the $1,467 she currently receives as income from two of the annuities.
The wife testified that, with the amounts she receives from the annuities, she has a monthly income of $2,521, and she stated that her monthly household and living expenses totaled $3,750 per month. Therefore, the wife claimed to have a monthly income deficit of $1,229 at the time of the hearing.
At the hearing, the wife testified that her mother’s life-insurance policy had been “cashed out” for about $30,000. The wife testified that the funds from that policy had been deposited into an account for her mother’s care that, at one point, had a balance of approximately $60,000; the wife testified that much of the money in that account had been used for her mother’s care. The wife explained that she used approximately $32,000 from that account to pay for her mother’s sitters and to pay her mother’s burial expenses that cost $13,000. According to the wife, after her mother’s death in February 2014, the wife deposited one-half of the remaining funds, together with $8,000 she received from an annual payment from one of the annuities, into a bank account in her own name, for a total initial deposit of $40,840.10.
The wife testified that she also has a checking account with a balance of $300 to $400 and an individual-retirement account valued at approximately $8,966.20.
The wife’s one-half interest in her mother’s house was valued at $71,000. The wife testified that she and her brother plan to sell their mother’s former home, and she stated that she uses income from a rental home she and her brother inherited from her mother to meet the monthly expenses for her mother’s former home, such as expenses for utilities, insurance, and taxes on that property.
*775 The husband is 68 years old and is retired from “Alfa.”[1] The husband worked for the State of Alabama for 12 years as an engineering assistant, and he worked for 13 years as a public-works director for the City of Sylacauga. The husband then worked for Alfa from January 1, 1990, until December 31, 2009. At the time of the trial, the husband had seasonal, part-time work from October to December of each year that generates approximately $2,000 per year. The husband suffers from health problems such as diabetes, high blood pressure, a pituitary problem, and prostate problems.
The husband receives $1,538.50 per month in Social Security benefits and $841.98 per month from an annuity that, in 2010, had a value of $157,587. The husband’s other retirement benefits from his former employers total $3,509.38 a month.[2] Thus, the husband has a monthly income of approximately $5,890 per month. At the hearing, the husband submitted a document, which was admitted into evidence, showing that the husband’s monthly expenses total $6,349, and a figure on that exhibit indicated that the husband claimed monthly income of $5,916. The husband also has a bank account with a value of $25,000, another $25,000 in a payroll-savings account, approximately $1,200 in a checking account, $600 in a personal savings account, and approximately $10,000 in a mutual fund. In addition, the husband has a term life-insurance policy in the amount of $345,000.
One month before the parties married in 1999, the husband purchased 3.75 acres of land for $25,000 with a $5,000 down payment. The $20,000 balance was financed solely by the husband, and the husband testified that he made all the payments on the note throughout the marriage. The parties resided rent free for two years at the wife’s mother’s home while they worked on constructing a marital home on that property; the parties moved into the marital home in 2005. The husband testified that he used $50,000 from the sale of his previous house on the construction of the marital home.
In 2009, the husband refinanced the indebtedness on the marital home and borrowed approximately $312,000. The husband testified that the closing attorney required the wife to execute a quitclaim deed to the husband so that any interest she had in the house would be signed over to the husband in order for the property to be refinanced in his name alone. Both the husband and the wife testified that the husband made all the mortgage payments on the house. The record does not show how the wife’s income was used throughout the parties’ marriage.
During the marriage, the parties purchased two lots adjoining the marital residence that included one lot of two acres and one lot of one acre, but neither party presented evidence concerning the value of either of those parcels of property. The wife testified that the only deed that -contains her name is the deed to the two-acre parcel, and her testimony indicates that the parties shared legal title to the two-acre parcel. At the hearing, the wife testified that the marital home and four acres *776 had a fair market value of $400,000, but the husband testified that he had an appraisal performed on the house a few weeks before trial that showed a fair market value of $362,000. It is not clear from the husband’s testimony whether the husband’s valuation of the 'marital home included the real property on which the marital home was located. .However, in the divorce judgment, the trial court valued the house and the 3.75 acres at $362,000, and it noted that approximately $295,000 was still owed on the mortgage indebtedness at the time the wife filed the complaint for a divorce.
The parties acquired other various property throughout the marriage.- The wife owned a 2002 Mercury automobile, and the husband owned a 2014 Toyota Camry automobile. In 2010, the parties purchased a recreational vehicle, which the wife valued at $15,000 but the husband valued at only $6,500, When the parties separated, the husband moved the recreational vehicle from being stored on the wife’s mother’s property and rented a lake lot for $1,400 per year on which to store the recreational vehicle. The parties also owned a tractor and some accessories, which the husband claimed were worth $5,000 and the wife claimed were worth $7,000. The parties also owned a storage building and a 2009 Ford F-150 pickup truck.
The parties separated in June 2013. After the parties’ separation, the wife moved into government-subsidized housing. At the hearing, the wife testified that she could no longer reside in the government-subsidized housing because of the additional income she received from her mother’s estate as part of her inheritance and that a new apartment at another apartment complex would cost $1,000 per month.
On October 14, 2014, the trial court entered a judgment divorcing the parties and awarding the wife $3,500 and the 2002 Mercury automobile. The trial court awarded the husband the marital home and all real estate, subject to its indebtedness, the tractor and accessories, the storage building, the recreational vehicle, the 2009 Ford F-150 pickup truck, and the 2014 Toyota Camry automobile. In the divorce judgment, the trial court determined that the marital home and the 3.75 acres upon which it was located was valued at $362,000 and that the husband had paid $50,000 toward the construction of the marital home with proceeds from the sale of the home he owned before the parties’ marriage. The trial court also found that the $295,000 mortgage-indebtedness balance was. financed in only the husband’s name and that the husband, made all the mortgage-indebtedness payments during the marriage and after the separation and that none of the wife’s funds were used to pay the mortgage. Based on that evidence, and because the wife had quit-claimed any interest she had. in the property to the husband during the refinancing of the property, the trial court found that the wife had no equitable interest in the marital home.
On October 24, 2014, the wife filed a Rule 59, Ala. R. .Civ. P., motion to alter, amend, or vacate the judgment. The trial court denied the wife’s motion on January 20, 2015. On March 2, 2015, the wife filed a timely notice of appeal.
On appeal, the wife argues that the trial court’s property division is inequitable and unsupported by the evidence; she also asserts that the trial court erred in failing to award her alimony or, at least, in failing to reserve the right to award periodic alimony in the future. When reviewing property divisions, this court has stated the following:
“The well-established standard of review is that a divorce judgment based on ore tenus evidence is presumed correct. *777 See Robinson v. Robinson, 795 So.2d 729 (Ala.Civ.App.2001). Such a judgment will-be reversed only where it is unsupported by the evidence so as to be plainly and palpably wrong. Id. at 733. On appeal the division of property and the award of alimony are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either issue. See O’Neal v. O’Neal, 678 So.2d 161 (Ala.Civ.App.1996). A property division does not have to be equal in order to be equitable based on the particular facts of each case; a determination of what is equitable rests within the sound discretion of the trial court. See Golden v. Golden, 681 So.2d 605 (Ala.Civ.App.1996).”
Baggett v. Baggett, 855 So.2d 556, 559 (Ala.Civ.App.2003). “The issues of property division and alimony are interrelated, and they must be considered together on appeal.” Williams v. Williams, 905 So.2d 820, 826 (Ala.Civ.App.2004).
When determining a party’s need for alimony and dividing marital property, the trial court should consider factors such as “‘the length of the marriage, the age and health of the parties, the future employment prospects of the parties, the source, value, and type of property owned, and the standard of living to which the parties have become accustomed during the marriage.’ ” Ex parte Elliott, 782 So.2d 308, 311 (Ala.2000) (quoting Nowell v. Nowell, 474 So.2d 1128, 1129 (Ala.Civ.App.1985)), (footnote omitted). Furthermore, “ ‘[e]ven where the parties are divorced on the grounds of incompatibility, the conduct of the parties and fault with regard to the breakdown of the marriage are factors for the trial court to consider in fashioning its property division.’ ” Ex parte Drummond, 785 So.2d 358, 363 (Ala.2000) (quoting Myrick v. Myrick, 714 So.2d 311, 315 (Ala.Civ.App.1998)).
As previously rioted, the trial court awarded the husband marital property that inelrided all the parties’ real estate, including the marital home and the 3.75 acres upon which it was located estimated to have a value of $362,000 but encumbered by mortgage indebtedness of $295,000, based on its determination that the wife had no equitable interest in the marital home. -Although the husband paid the monthly mortgage payments and only his name was listed on the mortgage, those facts do not justify the trial court’s failure to award the wife an equitable share of the marital assets acquired during the parties’ 13 years of marriage. The marital home was “used regularly for the common benefit of the parties- during their marriage,” for 9 of the 13 years that the parties were married. § 30-2-51(a), Ala.Code 1975; see also Mayhann v. Mayhann, 820 So.2d 836, 837-38 (Ala.Civ.App.2001) (finding- that the marital home in which the parties had resided during the marriage did not constitute separate property). Also, the parties resided rent free at the wife’s mother’s home while the marital home was being built. We conclude that the trial court erred in finding that the marital home and real property belonged solely to the husband.
In addition to awarding the husband the entire interest in the marital home and the property on which the home was located, which the trial court determined had equity of approximately $67,000, the trial court also awarded the husband the remaining personal property located in the marital home, the tractor and accessories with a value between $5,000 and $7,000, the recreational vehicle with a value b,etween $6,500 and $15,000, the 2009 Ford F-150 pickup truck of unknown value, the 2014 Toyota Camry auto *778 mobile of unknown value, and a storage building of unknown value. On the other hand, the wife was awarded $3,500 and the 2002 Mercury automobile of unknown value. Thus, out of the marital estate with an ascertainable value, the husband received an award with a value between $78,500 and $89,000, plus other unvalued assets. The wife was awarded $3,500 and a older-model vehicle.
The property division clearly favors the husband and does not fully take into consideration the contributions the wife made to the marriage. The wife testified that she was employed outside the home until 2003 or 2004 when she became disabled and could no longer continue working. Thus, the wife worked outside the home for at least four years during the marriage. The wife testified that she was also responsible for duties within the home and contributed to the marital home and real property in ways such as cleaning, painting, working in the yard, making purchases, and generally helping to maintain the property.
The parties were married for 13 years. At the time of the hearing, the wife was 67 years old. The wife testified that she suffers from several health issues such as arthritis, thyroid disease, fibromyalgia, osteoporosis, a “bad heart,” and a spot on her lung, and she has had three knee surgeries. Because of the wife’s disability, she testified, she had to quit her job and is no longer able to work. The wife has a monthly income of $2,521 and has claimed living expenses in the amount of $3,750 per month. .Therefore, she claimed to have a deficit of $1,229 per month at the time of the hearing.
The husband was 68 years old at the time of trial. The husband testified that he also has health issues that include diabetes, high blood pressure, a pituitary problem, and prostate problems. The husband has a monthly income of approximately $5,900, and he claims living expenses of $6,349 monthly. The husband is retired but still has seasonal work each year that allows him to earn additional income.
The wife testified that she can no longer live in government-subsidized housing because of the inheritance she received from her mother’s estate and that she will have to pay additional money for another apartment. The husband, on the other hand, retains ownership of the marital home and all of the remaining personal property held inside the home, which the trial court awarded exclusively to him.
As previously mentioned, the trial court’s determination as to periodic alimony must be considered together with its division of marital property. See Williams, 905 So.2d at 826. The wife argues that the trial court erred in failing to award her a greater portion of the marital assets or in failing to award her periodic alimony or, at least, in failing to reserve the right to award periodic alimony in the future; we agree. In this case, the parties’ marital home was their main asset, and the trial court awarded the home and the vast majority of the other assets to the husband. The husband’s income is approximately twice that of the wife’s. Furthermore, the evidence indicates that the three annuities from which the wife currently receives income will all expire in 2019, thus indicating that the wife’s monthly income is likely to decrease.
In its judgment, the trial court found that the wife had substantial assets in her separate estate. Section 30 — 2—51, Ala;Code 1975, provides that a trial court may consider a party’s separate estate, such as inherited property not used for the common benefit of the marriage, in fashioning a property division.
*779 “A party’s “‘separate estate” is that property over which [he or] she exercises exclusive control and from which the [spouse] ... derives no benefit by reason of the marital relationship.’ Gartman v. Gartman, 376 So.2d 711, 713 (Ala.Civ.App.1978). The separate estate of the parties in a divorce proceeding includes property owned prior to the marriage and property received by gift or inheritance during the marriage. § 30-2-51(a), Ala.Code 1975. Although marital property generally includes property purchased or otherwise accumulated by the parties during the marriage, it may also include the property acquired before the marriage or received by gift or inheritance during the marriage when it is used, or income from it is used, regularly for the common benefit of the parties during their marriage. See § 30-2-51(a), Ala.Code 1975.”
Nichols v. Nichols, 824 So.2d 797, 802 (Ala.Civ.App.2001).
It was proper for the trial court to consider the wife’s separate estate. In this case, though, it appears the trial court found that the wife’s separate estate was sufficiently adequate to cover the wife’s expenses and that, therefore, the wife was not entitled to much of the marital assets. However, the fact that a spouse has a separate estate does not negate the requirement that marital property is to be divided equitably between the parties. We conclude that the property division exceedingly favors the husband so as to render it inequitable. Accordingly, we reverse the portion of the trial court’s judgment dividing the parties’ property, and we remand the cause for the trial court to enter an equitable division of the parties’ marital property and/or an alimony award.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.

. The full name of the "Alfa” company with which the husband had been employed is not contained in the record on appeal. For the purposes of this appeal, we refer to that former employer as “Alfa.”

. We note that the husband worked from 1965 to 1990 for either the City of Sylacauga or the State of Alabama, and, thus, his retirement benefits from those entities had accrued before the parties’ marriage in 1999. Because the husband had worked for Alfa from 1990 to 2009, almost half of his retirement benefits from that company had accrued before the parties’ marriage.