THOMPSON, Presiding Judge.
Nancy Ann Davis ("the wife") appeals from the judgment of the Wilcox Circuit Court ("the trial court") divorcing her from John H. Davis ("the husband"). In the judgment, the trial court divided the parties' marital property and stated that it "expressly resolve[d] the periodic alimony issue by the division of property" it made.
The testimony in the record is often confusing and difficult to follow. The testimony was interrupted on numerous occasions as the attorneys for the parties quarreled and had to be admonished by the trial court. The trial transcript shows that the behavior of the attorneys, especially the husband's attorney, unnecessarily prolonged the trial to the point that the wife had very little time in which to present her case.
That being said, the record indicates the following facts relevant to the issues on appeal. The husband and the wife were married in 1958. At the time of the marriage, the husband, a college graduate who was teaching school, was 39 years old. The wife was 14 years old and was pregnant with the husband's child. The wife did not finish school; however, she earned a General Education Diploma, often called a GED. During the course of the marriage, the record indicates, the wife had at least six children. At the time of the trial, the husband and the wife were 97 and 71 years of age, respectively. The husband was in poor health and was undergoing treatment for cancer at the time of the trial. He could not see well and might even have been blind. The husband was living with one of the parties' daughters, who had taken him in to live with her after he was released from the hospital. The daughter's house was closer to where the husband was to receive cancer treatment than was the marital residence. The wife acknowledged that she did not attend the treatment sessions with the husband, but, she said, she was not made aware of them in time to attend.
The husband testified that he filed the divorce complaint while he was living away from the wife.[1] He added that she had wanted a divorce for 40 years or since 1980. He also said that the wife and he had slept in separate bedrooms for approximately 30 years and that she had locked him out of her room.
The husband represented to the court that the wife had tried to shoot him but *895 had failed to release the safety on the gun. A pastor who testified that he was present during the incident corroborated the husband's testimony. The wife denied having tried to kill the husband. She testified that he had been controlling throughout the marriage.
The husband testified that he would not "allow" the wife to work during the first 15 to 20 years of the marriage. The wife confirmed that the husband would not allow her to work. However, she said, in 1976 she began working as a school-bus driver for a private school. In 1978, the wife was hired by the Wilcox County school system to drive a school bus, and she held that job until her retirement in May 2006. Evidence showed that, at the time of the trial, the wife received $781.30 each month from her state retirement account and $620.90 in Social Security income, for a total monthly income of $1,402.20. From that amount, however, $104.90 was deducted for Medicare premiums, leaving the wife with a monthly income of $1,297.30.
The husband worked as a public-school teacher in St. Clair County for at least 40 years. He testified that he became a pastor after he retired from teaching, and he also farmed. The husband's retirement income included his teacher's pension of $921.03 each month and Social Security income of $1,149.50 each month, for a total monthly income of $2,070.53. From that amount, the husband also had a deduction of $104.90 for Medicare premiums, as well as expenses in the amount of $48 for an additional health-insurance premium and $9.34 for Alabama Education Association dues, leaving the husband with a monthly income of $1,908.29.
During the marriage, the parties purchased two parcels of property in Marengo County. According to the husband's attorney, one of those parcels is the site of an "old fallen-down" funeral home. The trial court expressed a concern that, because of the chemicals used at the site when the funeral home was operational, "it may be more of a liability than what it is worth." The other property in Marengo County is a four-acre parcel that has two "trailers" on it. The wife testified that she did not wish to be awarded either of the parcels of real property in Marengo County. Evidence indicated that the combined value of those two parcels of real property according to 2012 tax assessments was $3,200.
During the marriage, the parties also acquired the marital residence in Camden, located in Wilcox County. The wife testified that the house was in disrepair to the point that she could not obtain insurance on the structure. One of the parties' children also testified that the home was in poor repair and required a lot of work. There is no indebtedness on the house, but neither party provided evidence as to the value of the house.
The property that is the primary subject of the appeal in this case is a 40-acre tract of property ("the farm") that is now timberland. The husband testified that he and his mother purchased the farm in 1940 and put it in his brother Eugene's name. The husband said that, years later, Eugene failed to pay the taxes on the farm and lost that land. It is unclear from the record exactly when Eugene lost the farm. However, the husband said that "years later"-in the 1970s-he purchased the farm "through a contract." The deed to the farm was in the husband's name only. The 2012 tax assessment for the farm appraised it at $40,400.
The husband testified that, initially, he grew okra and corn, among other things, and said that he raised animals on the farm until about 1954. However, he also testified that he raised animals on the farm during the marriage. We note that *896 the wife and the husband did not marry until 1958. The husband also said that the wife never helped him farm the land, adding that he "didn't allow her to work." Again, the testimony is confusing, because the husband also said that he did not farm the land while he was married to the wife. One of the parties' children, John Netta Ngirailab, testified that she helped raise crops on the farm and that the crops were sold and the money was given to the husband. Ngirailab said that that money "was my father's [i.e., the husband's] income."
The husband said that, during the marriage, he "had turned [the farm] over to tree planting." At the time of the trial, the husband said, he used the farm as timberland and leased it for hunting. He said that he had cut about $50,000 worth of timber from the farm and gave the money to his siblings. The last time he cut timber, he said, was about six or seven years before the trial, when he harvested about $6,000 worth of timber. From that harvest, he said, he gave $2,000 each to his two surviving siblings. None of the husband's siblings was living at the time of the trial. The husband testified that he wanted to keep the farm in the family. He said that, in his mind, he had already given the farm to the parties' children.
The wife also sold about $6,000 worth of timber after the husband had left the marital residence, without the permission of the husband. She testified that she had given the money to the parties' children. The husband testified that it was "fine with [him]" that the wife had cut the timber and given the money to the children, but that he wanted someone "to go right, come and tell Daddy." Ngirailab testified that, after the husband was released from the hospital, the parties' children had begun to renovate the marital residence to enable the husband to use a wheelchair in it, but the husband did not return to the marital residence. She said that the money the wife gave the children was to reimburse them for the money they had spent on the renovations.
After the trial, the trial court entered a judgment divorcing the parties and dividing the marital property. The wife was awarded the marital residence and the two parcels of real property valued at a total of $3,200. The husband was awarded the farm. Each party received his or her own retirement account or pension, the personal property in his or her respective possession, and any financial accounts held in his or her own name. The husband was also awarded a savings account. As mentioned, the trial court stated in the judgment that it "expressly resolve[d] the periodic alimony issue by the division of property."
The wife filed a motion to alter, amend, or vacate the judgment, arguing, among other things, that the division of marital property was inequitable. The trial court held a hearing on the motion, which was just as contentious between the attorneys as was the trial. At the hearing, the wife argued that the only property that had "any real value" was the farm that had the standing timber.
The primary issue at the hearing on the postjudgment motion revolved around what evidence from the trial demonstrated that the farm was a marital asset subject to division. The trial court asked what testimony had been presented indicating that the wife had worked on the farm, adding: "[W]hat I recall was all of this was some part of some family property that [the husband] had from his side of the family, and I don't recall that being used as a marital asset." The wife's attorney pointed out that the farm had "previously [been] family property that was purchased by the parties during the course of the marriage." The trial court agreed with that statement. The trial judge also stated that *897 he recalled "giving [the wife] all of the property that the parties used together as marital property" and stated that he "thought [he] was giving her income-producing property." However, the trial court made clear that it would look at whether the parties used the farm as some kind of marital asset. The trial court also expressed concern that the husband have sufficient money to obtain his cancer treatment. At the hearing, the trial judge stated that the husband's
"condition is such that he just didn't have anything left over after he takes care of his medical expenses. And, so, I can't allow the man to die. ... That's the way I saw it, now, and that's the way I'm calling it, and I'm not going to change that. But I don't mind trying to be sure the wife is compensated right, so she could move on based on that long-term marriage."
The wife's postjudgment motion was denied by operation of law. See Rule 59.1, Ala. R. Civ. P. The wife filed a timely notice of appeal. The husband did not favor this court with an appellate brief.
On appeal, the wife contends that the trial court abused its discretion in dividing the marital property. She asserts that, by awarding the husband the only income-producing property, the division of marital assets was inequitable. Our standard of review as to this issue is well settled.
" ' " 'A trial court's determination as to alimony and the division of property following an ore tenus presentation of the evidence is presumed correct. Parrish v. Parrish, 617 So.2d 1036 (Ala. Civ. App. 1993). Moreover, issues of alimony and property division must be considered together, and the trial court's judgment will not be disturbed absent a finding that it is unsupported by the evidence so as to amount to an abuse of discretion. Id.'
" ' " Morgan v. Morgan, 686 So.2d 308, 310 (Ala. Civ. App. 1996)....
" ' " 'The trial court has wide discretion over alimony and the division of property, and it may use whatever means are reasonable and necessary to equitably divide the parties' property. Grimsley v. Grimsley, 545 So.2d 75, 77 (Ala. Civ. App. 1989). Its judgment is presumed correct and will not be reversed unless it is so unsupported by the evidence ... as to be unjust and palpably wrong. Grimsley, 545 So.2d at 76. However, that judgment is subject to review and revision. Moody v. Moody, 641 So.2d 818, 820 (Ala. Civ. App. 1994). This Court must consider the issues of property division and alimony together when reviewing the decision of the trial court, Albertson v. Albertson, 678 So.2d 118, 120 (Ala. Civ. App. 1996), and, because the facts and circumstances of each divorce case are different, this court must also consider the particular facts and circumstances of the case being reviewed. Murphy v. Murphy, 624 So.2d 620, 623 (Ala. Civ. App. 1993).'
" ' " Bushnell v. Bushnell, 713 So.2d 962, 964-65 (Ala. Civ. App. 1997)." '
" Ex parte Foley, 864 So.2d 1094, 1097 (Ala. 2003) (quoting Ex parte Drummond, 785 So.2d 358, 360-61 (Ala. 2000) )."
Ex parte Moore, 873 So.2d 1161, 1165-66 (Ala. 2003).
"When determining a party's need for alimony and dividing marital property, the trial court should consider factors such as ' "the length of the marriage, the age and health of the parties, the future employment prospects of the parties, the source, value, and type of property owned, and the standard of living to *898 which the parties have become accustomed during the marriage." ' Ex parte Elliott, 782 So.2d 308, 311 (Ala. 2000) (quoting Nowell v. Nowell, 474 So.2d 1128, 1129 (Ala. Civ. App. 1985) ) (footnote omitted). Furthermore, ' "[e]ven where the parties are divorced on the grounds of incompatibility, the conduct of the parties and fault with regard to the breakdown of the marriage are factors for the trial court to consider in fashioning its property division." ' Ex parte Drummond, 785 So.2d 358, 363 (Ala. 2000) (quoting Myrick v. Myrick, 714 So.2d 311, 315 (Ala. Civ. App. 1998) )."
Culver v. Culver, 199 So.3d 772, 777 (Ala. Civ. App. 2016).
In this case, the evidence indicated that, from their respective retirement accounts and Social Security benefits, the wife had a monthly income of $1,297.30 after deductions and the husband had a monthly income of $1,908.29 after deductions. The record demonstrates that the wife was awarded cash assets of approximately $150. The husband was awarded financial accounts worth approximately $13,180 at the time of the trial. Aside from their own retirement accounts, personal accounts, and personal property-the value of which we cannot discern from the record on appeal-the parties' undisputed assets included the marital residence, which was awarded to the wife, and the two smaller parcels of property worth a combined $3,200, which were also awarded to the wife. The evidence indicated that the marital residence was in poor condition. The trial court noted that the parcel that was the site of an old funeral home might be more of a liability than it is worth because of the presence of chemicals, but there was no evidence presented to that effect. Therefore, we do not consider the prior use of that parcel when reviewing the equity of the division of marital property.
Based on the comments made during the hearing on the wife's motion to alter, amend, or vacate, and the trial court's decision not to grant that motion, it appears that the trial court determined that the farm was part of the husband's separate estate and not a marital asset. The farm has a value of $40,400, and it is able to produce income periodically from the harvest and sale of timber. Thus, if the farm is marital property, it would be the parties' most valuable marital asset.
The wife argues that the farm is a marital asset and that, in denying her any portion of the farm, the trial court crafted an inequitable division of property, considering the length of the marriage, the parties' respective ages, and the likelihood that neither party will be able to earn an income from future employment. The wife recognizes the need for the husband to be able to purchase medicine, and she does not challenge any aspect of the property division other than the disposition of the farm.
"A party's ' "separate estate" is that property over which [he or] she exercises exclusive control and from which the [spouse] ... derives no benefit by reason of the marital relationship.' Gartman v. Gartman, 376 So.2d 711, 713 (Ala. Civ. App. 1978). The separate estate of the parties in a divorce proceeding includes property owned prior to the marriage and property received by gift or inheritance during the marriage. § 30-2-51(a), Ala. Code 1975. Although marital property generally includes property purchased or otherwise accumulated by the parties during the marriage, it may also include the property acquired before the marriage or received by gift or inheritance during the marriage when it is used, or income from it is used, regularly for the common benefit of the parties *899 during their marriage. See § 30-2-51(a), Ala. Code 1975."
Nichols v. Nichols, 824 So.2d 797, 802 (Ala. Civ. App. 2001). See also Meek v. Meek, 83 So.3d 541, 555 (Ala. Civ. App. 2011) (same). In Kaufman v. Kaufman, 934 So.2d 1073, 1080 (Ala. Civ. App. 2005), this court held that assets that were accumulated during the marriage, and that were not received by gift or by inheritance, were marital assets subject to property division. Similarly, in Durbin v. Durbin, 818 So.2d 396, 401 (Ala. Civ. App. 2000), overruled on other grounds, Ex parte Durbin, 818 So.2d 404 (Ala. 2001), this court held that even though income from certain stock was not used for the common benefit of the marriage, the stock itself was acquired during the marriage and was, therefore, marital property.
Although at trial the husband appeared to argue that the farm was part of his separate estate because the farm had once been the property of his family before the marriage, the evidence is undisputed that the family lost the farm because the taxes had not been paid on it. The evidence is also undisputed that, when the husband bought the farm "through a contract" in the 1970s, he was married to the wife. He did not receive the farm by means of an inheritance or as a gift. Additionally, evidence indicates that, during the marriage the husband had income from both the sale of crops and the sale of timber that had been harvested from the farm. One of the parties' daughters, who was born during the marriage, testified that the money earned from the sale of crops was at least part of the husband's income. Furthermore, even though the husband gave some of the timber proceeds to his siblings, he also appears to have retained a share of the proceeds. Although there is no evidence in the record to show whether those proceeds were used for the benefit of the marriage, there is no question that the farm was acquired during the marriage. Thus, the farm was a marital asset subject to division. Kaufman, supra, and Durbin, supra.
Based on the record before us, we conclude that the trial court's apparent conclusion that the farm was part of the husband's separate estate is not supported by the evidence. Accordingly, the judgment dividing the marital property is due to be reversed.
In reversing the judgment, we are not determining whether the trial court must award the farm or any portion of the farm to the wife. Instead, the trial court is directed to reconsider its division of marital assets in light of our holding that the farm is marital property.
Because we are reversing the judgment of the trial court, we pretermit discussion of the wife's other issue on appeal-that is, whether the trial court committed reversible error in having what she said was an ex parte communication with the husband's attorney before entering the judgment in this case.
For the reasons set forth above, the judgment is reversed and the cause is remanded to the trial court for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Pittman, Thomas, Moore, and Donaldson, JJ., concur.

The divorce complaint was filed on October 18, 2013. The wife filed a counterclaim for a divorce on June 5, 2014.