Deborah Diane Cunningham ("the wife") appeals from a divorce judgment entered by the Lamar Circuit Court in which the court, among other things, dissolved her marriage to Randy Paul Cunningham ("the husband") and divided the parties' marital property. We reverse and remand with instructions,
The parties were married on December 10, 1981. One child was born of the marriage. That child was an adult at the time of the divorce proceedings. On July 2, 2004, after 22 years of marriage, the husband filed a complaint seeking a divorce. The wife answered and filed a counter-claim requesting alimony and other relief; she later amended her counterclaim, alleging that the husband had committed adultery. In their pleadings, both parties alleged that the other had been physically abusive and had destroyed marital property.
The trial court entered an order directing the parties to refrain from harming or threatening each other and to refrain from destroying or disposing of any marital property. On September 16, 2005, the case was heard before the trial court, and that court subsequently entered an order on September 19, 2005, divorcing the parties on the ground of incompatibility of temperament. In its order, the trial court awarded the husband a number of vehicles and equipment used in his business, subject to any indebtedness on those vehicles and equipment; all of his clothing and personal effects; and all of his retirement account containing approximately $30,000. The trial court awarded the wife a 2005 Chevrolet Silverado truck, subject to approximately $23,000 in debt; all of her clothing, jewelry, and personal effects; and all of the parties' household furniture, goods, cookware, and other furnishings. The trial court declined to award alimony, but it reserved the issue for a possible future award. The court did not initially dispose of the parties' real property because it found that the evidence was ambiguous as to what property the parties owned.
On September 20, 2005, the day after entering the first order, the trial court entered an amended order with minor clerical changes. Following the entry of the amended order, the wife filed a purported postjudgment motion in which she requested that the trial court resolve the remaining issues between the parties, including the division of certain real estate. Subsequently, on December 19, 2005, the trial court entered an order entitled "supplemental decree" in which it ordered that the parties' real property be sold and that the proceeds be divided equally between the parties; in that order, the trial court denied all other requested relief. That December 19, 2005, order was a final judgment because it resolved the last of the pending issues and requests for relief between the parties. See Hill v. Cleveland, 929 So.2d 471, 473
(Ala.Civ.App. 2005)("A final judgment must dispose of all claims or determine the rights or liabilities of all parties."). Later, on January 1, 2006, the trial court entered an order in which it made a minor clarification that is not relevant to the issues on appeal. The wife timely appealed to this court.
The relevant facts adduced at trial are as follows. Both the husband and the wife testified that, after 22 years, their marriage and relationship had deteriorated and irreconcilable differences had developed. The husband and the wife both testified that the other had a drinking problem and that they argued frequently. Both parties testified that the other had been physically abusive on multiple occasions, and the wife testified that physical altercations between the couple had occurred *Page 1160 
approximately 15 to 20 times throughout the marriage. The husband testified that he had called the police approximately five times to respond to altercations with the wife. On one occasion, the husband was arrested for domestic violence, but the charges were subsequently dropped when he agreed to go to counseling. The husband further testified that the couple had separated in June 2004, had reconciled a few months later, and then had separated again for the final time on April 26, 2005.
The wife testified that the husband was having an affair and that the husband's paramour sometimes answered the telephone when the wife called the home where the husband lived after the separation. The husband testified that, although he had been dating someone after he had separated from the wife for the final time, he had not had a sexual relationship with anyone before the couple had separated for the final time on April 26, 2005. The husband also testified that he had hired his girlfriend to answer the telephone and perform other clerical work for his business.
The husband testified that he operates the lawn-care and tree-service business that both he and the wife had previously operated and that, in the past, he had listed his business in the telephone directory and in other advertisements as being owned by both the husband and the wife. At the time of the trial, both parties were still listed in the telephone directory and on other advertisements as being co-owners of the business. The husband's testimony and the parties' tax returns from 2003 and 2004 established that the business had gross receipts of approximately $116,000 in 2003 and $102,000 in 2004. After expenses, depreciation, and other costs, however, the parties reported only approximately $13,000 in net income in 2003 and approximately $6,000 in net income in 2004.
The wife testified that she has been diagnosed with Klippel-Feil Syndrome and scoliosis, that, as a result, she has been declared permanently and totally disabled, and that she receives as her only source of income a Social Security disability check in the amount of $480 per month. She submitted an exhibit to the trial court indicating that her monthly expenses were approximately $2,060, which included $500 per month for rent, $162.50 per month for utilities, $200 per month for food, $469.51 per month for payments on the indebtedness on the 2005 Chevrolet Silverado truck, $250 per month for medication, $77.50 per month for automobile insurance, $130 per month in automobile expenses, $69.40 per month for life insurance,[1] $100 per month for toiletries and other items marked "essentials," and $100 per month for telephone service.
Both parties testified that the husband has a retirement account, and the husband testified that the account is worth approximately $30,000. This account was created initially in 1977, before the marriage, when the husband began working for Hyster Company. The husband continued to work for Hyster for several years after the parties were married. The parties disputed, however, when the value in the account was accumulated. The husband testified that he accumulated all of the value in the account before the marriage. The wife, however, testified that the husband was laid off and rehired at one point and that, when he was laid off, all of the value in the account was lost. She further testified that all the value presently in the account was contributed after the marriage. *Page 1161 
Both parties also gave testimony and submitted documents outlining the value of the property that they own. The parties testified that, with the exception of a few personal items whose total value was estimated by the parties to be less than $500, most of their property had been acquired after the marriage. The husband valued the parties' house and the real property surrounding the house at $45,000, and the wife valued the house and property at $55,000. The wife valued the business property at $151,200, and the husband valued it at $127,600. The parties did not testify as to the present value of the 2005 Chevrolet Silverado truck, but the wife testified that $23,000 remained due on the truck at the time of the trial. The wife estimated a value of $15,250 for the parties' household property, and the husband valued the same property at $6,520.
The wife focuses a great deal of her argument on the refusal of the trial court to divide the husband's retirement account. Alabama provides for the division of retirement accounts between spouses, but only under certain circumstances, as outlined in § 30-2-51(b), Ala. Code 1975, which states:
 "(b) The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed, provided that the following conditions are met:
 "(1) The parties have been married for a period of 10 years during which the retirement was being accumulated.
 "(2) The court shall not include in the estate the value of any retirement benefits acquired prior to the marriage including any interest or appreciation of the benefits.
 "(3) The total amount of the retirement benefits payable to the non-covered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court."
To determine whether a retirement account should be divided, the general rule regarding property division applies, i.e., the property division as a whole must be equitable.J.N.H. v. N.T.H. II, 705 So.2d 448, 451
(Ala.Civ.App. 1997). As § 30-2-51(b) indicates, whether to divide a retirement account is within the trial court's discretion. Thus, the failure to divide a retirement account is an abuse of discretion only when it results in an overall inequitable division of property. J.N.H. v. N.T.H. II,705 So.2d at 451 ("[Retirement benefits are subject to the same rule of equitable division within the trial court's discretion as is other marital property. So long as the trial court's division of property is equitable, it is not required to divide . . . retirement benefits.").
It is undisputed that, at the time the husband filed for divorce, the parties had been married for more than ten years. The wife testified unequivocally that all the value in the retirement account had been accumulated after the parties were married. The husband directly contradicted that testimony, testifying that he had accumulated all the value before the marriage. The trial court explicitly found in its September 19, 2005, order that the wife had not presented sufficient evidence regarding how much of the $30,000 retirement account the husband had accumulated before and after the marriage to justify a division of the retirement account.
Because the testimony of the parties directly conflicted, the trial court's resolution of this issue appears to be one based on the credibility of the witnesses. In ore tenus proceedings, "the trial court is the only judge of the facts and of the *Page 1162 
credibility of the witnesses." Carr v. Broyles,652 So.2d 299, 301 (Ala.Civ.App. 1994). A trial court's judgment based on ore tenus evidence is presumed correct and will not be overturned absent a showing that the trial court abused its discretion. Allen v. Allen, 903 So.2d 835, 840
(Ala.Civ.App. 2004). The wife has not established that the trial court abused its discretion in refusing to divide the husband's retirement account.
The wife also contends that the trial court abused its discretion in failing to adjust its property division to account for the husband's alleged adultery. Certainly, the trial court must take into account as a factor, "`in appropriate situations, the conduct of the parties with reference to the cause of the divorce.'" Adams v. Adams, 778 So.2d 825, 827
(Ala.Civ.App. 2000) (quoting Bolton v. Bolton,720 So.2d 929, 930 (Ala.Civ.App. 1998)). In its orders disposing of the parties' assets, the trial court made no mention of misconduct by either party and did not appear to make an adjustment in the property division based on any misconduct. The wife, however, does not allege that the husband's adultery contributed to the parties' divorce. In fact, the wife does not claim that the husband was having an affair until after the parties had separated for the final time. Further, the trial court heard ample evidence of misconduct — i.e., alcohol abuse and physical abuse — by both parties. In light of the evidence demonstrating misconduct by both parties, the trial court could have reasonably found that both parties contributed in equal measure to the breakdown of the marriage. Therefore, the wife has failed to demonstrate that the trial court erred by not taking into account the husband's alleged adultery in fashioning the property division.
However, the wife's primary contention on appeal is that the trial court's property division is inequitable as a whole. The retirement account is only one of the assets to consider in reviewing the overall property division. This court has stated:
 "On appeal, the issues of alimony and property division must be considered together. The trial court's judgment on those issues will not be reversed absent a finding that the judgment is so unsupported by the evidence as to amount to an abuse of discretion. The property division need not be equal, but it must be equitable. The factors the trial court should consider in dividing the marital property include `the ages and health of the parties, the length of their marriage, their station in life and their future prospects, their standard of living and each party's potential for maintaining that standard after the divorce, the value and type of property they own, and the source of their common property.' Covington v. Covington, 675 So.2d 436, 438
(Ala.Civ.App. 1996)."
Courtright v. Courtright, 757 So.2d 453, 456
(Ala.Civ.App. 2000) (some citations omitted).
As we have previously mentioned, the parties were married for 22 years. The husband was 45 years old at the time of the trial, and the record indicates that he is in good health. The wife, however, though of comparable age, is permanently disabled due to several severe medical conditions. As to the parties' future prospects, the husband has the ability to work and to earn an income through his business or some other source, but the wife cannot work due to her disability. The wife's only source of income is her disability check in the amount of $480 per month.
The wife testified that her estimated monthly expenses were in excess of $2,000. The trial court appears to have viewed the *Page 1163 
wife's expenses as being excessive because the expenses included a $469 truck payment and what the court viewed as an unreasonable $100-per-month telephone bill. However, even if the wife pares down her expenses significantly, those expenses will still greatly outweigh her income, indicating that she will not be able to even remotely maintain the standard of living she enjoyed during the marriage. The husband, however, retains the right to all the income from the business, which the trial court awarded entirely to him.
In Kaufman v. Kaufman, 934 So.2d 1073, 1081
(Ala.Civ.App. 2005), we reversed a divorce judgment after concluding that the judgment "disproportionately favor[ed] the husband." In that case, the parties had been married for 33 years, were nearing retirement age, and had a limited ability to earn a living in the future. 934 So.2d at 1076-77. The wife was receiving approximately $400 per month in Social Security income and had no way to earn additional income. In making its property division, the trial court in Kaufman awarded the husband approximately 77% of the marital estate and awarded the wife approximately 23% of the marital estate, along with $500 per month in alimony. In reversing that judgment, this court noted that the property division was especially inequitable in light of the length of the parties' marriage.934 So.2d at 1081. See also Adams v. Adams,778 So.2d at 827 (reversing a trial court's judgment containing a division of property that awarded only 16% of the parties' assets to the wife because the division was "so disproportionate as to be inequitable").
Factoring in the value of the property awarded to the husband and the value of the business equipment and the husband's retirement account and subtracting the $53,000 of business debt, the trial court awarded the husband property with a total value of $104,600 as estimated by the husband and $128,200 as estimated by the wife.[2] As for the wife, the total value of the property she received is $6,520 as estimated by the husband and $15,250 as estimated by the wife. Even accepting the highest estimated value for the property awarded to the wife and the lowest estimated value for the property awarded to the husband, the trial court awarded the husband approximately 87% of the parties' net worth and the wife approximately 13%. Though the trial court found that neither party's valuation of the marital assets bore "indicia of reliability," we find the division of the martial assets to be inequitable.
Here, the property division ordered by the trial court combined with the lack of alimony awarded to the wife and the wife's complete disability leaves the wife with insufficient means to meet her basic expenses. Also, the award of approximately 13% of the parties' assets to the wife is on par with the awards held to be inequitable in Kaufman v. Kaufman, supra, andAdams v. Adams, supra. Under these facts and in view of the length of the parties' marriage, we conclude that the trial court's property division and alimony award were inequitable.
Based on the foregoing, we reverse the judgment and remand the case for the trial court to enter a judgment fashioning an *Page 1164 
equitable property division and alimony award.
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., and PITTMAN, MURDOCK, and BRYAN, JJ., concur.
[1] The wife testified at trial that the $69.40 figure for life insurance was actually a quarterly expense, which would make the monthly figure closer to $23 per month.
[2] In his brief to this court, the husband claims that the parties' residence and surrounding real property was sold pursuant to the trial court's December 19, 2005, order and that the proceeds were divided equally between the parties. The wife claims in her brief that she received approximately $15,000 for her interest in the house and property. However, there is no evidence in the record establishing how much the house and property were sold for or how much was distributed to the parties. Therefore, we do not consider the disposition of the house and property in our analysis of the property division.