24 So.3d 1091 (2009)
Ex parte F. Scott ANDREWS, Jr.
(In re F. Scott Andrews, Jr. v. Eva Sproull Andrews).
1080593.
Supreme Court of Alabama.
May 22, 2009.
Traci Owen Velk, Birmingham, for appellant.
Submitted on petitioner's brief only.
PER CURIAM.
WRIT DENIED. NO OPINION.
WOODALL, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
LYONS, STUART, and SHAW, JJ., concur specially.
COBB, C.J., dissents.
*1092 SHAW, Justice (concurring specially).
I concur in denying the petition for the writ of certiorari. Although certiorari petitions are normally denied by an order of the Court without the issuance of an opinion of the Court or a writing of an individual Justice, I feel compelled, in response to the Chief Justice's dissent and her characterization of this Court's rationale for denying the petition as "hypertechnical," to express my reasons for concurring.
This is a divorce case. The petitioner, F. Scott Andrews, Jr. ("the husband"), and his former wife, Eva Sproull Andrews ("the wife"), were divorced in April 2008. The trial court divided the marital property between the two. According to the husband's statement of facts, property valued at $35,200 was awarded to him and property valued at $1,434,663 was awarded to the wife.[1] The husband appealed.
The Court of Civil Appeals unanimously affirmed the trial court's judgment in a no-opinion affirmance that cited no less than 20 supporting authorities, none of which the husband addresses in his petition. Andrews v. Andrews (No. 2070809, February 6, 2009), ___ So.3d ___ (Ala.Civ.App. 2009) (table). The husband then petitioned this Court for certiorari review.[2]
"Certiorari review is not a matter of right, but of judicial discretion. A petition for a writ of certiorari will be granted only when there are special and important reasons for the issuance of the writ." Rule 39(a), Ala. R.App. P. A certiorari petition may be granted only pursuant to the grounds specified in Rule 39(a)(1) (civil cases and non-death-penalty criminal cases) or (2) (death-penalty cases), Rule 39(a)(1) states:
"In all civil cases and in all criminal cases other than cases in which the death penalty is imposed, petitions for writs of certiorari will be considered only:

"....
"(D) From decisions in conflict with prior decisions of the Supreme Court of the United States, the Supreme Court of Alabama, the Alabama Court of Criminal Appeals, or the Alabama Court of Civil Appeals; provided that:

"....
"2. Where it is not feasible to quote that part of the opinion either because no wording in the opinion clearly shows the conflict or because no opinion was issued, the petition shall state that this subparagraph is applicable and then state, with particularity, how the decision conflicts with a prior decision ...."
(Emphasis added.) In addition, this Court grants certiorari review only when it "concludes that there is a probability of merit in the petition ...." Rule 39(f), Ala. R.App. P.
In this case, the husband seeks certiorari review under Rule 39(a)(1)(D)(2), which, as noted above, requires that he "state, with particularity, how the decision conflicts with a prior decision." The husband's discussion of this ground is as follows:
"The decision of the trial court to award [the husband] only 2% of the marital estate is grossly inequitable and this Court has consistently reversed decisions wherein one party is awarded a *1093 disproportionate portion of the marital estate. In Kaufman v. Kaufman, 934 So.2d 1073 (Ala.Civ.App.2005), this Court reversed a divorce decree where the husband received approximately 77% of the marital estate and the wife received 23%. An award of only 16% to one party was also found to be `so disproportionate as to be inequitable.' Adams v. Adams, 778 So.2d 825 at 827 (Ala.Civ.App.2000).
"And in a case where Wife was awarded only 13% of the parties' assets, the Alabama Court of Civil Appeals cited this Court in Kaufman v. Kaufman, supra, and Adams v. Adams, supra, in concluding the trial court's property division was inequitable. Cunningham v. Cunningham, 956 So.2d 1157 (Ala.Civ. App.2006)."[3]
From what the husband states in the text of his petition, those cases would appear to hold that the various ratios represented in the property divisions in those cases were inequitable. The husband does not, however, offer an actual discussion of the analysis undertaken by the Court of Civil Appeals in the above-cited cases in arriving at those holdings. Instead, he simply states the result of those decisions and then invites this Courtan invitation the Chief Justice acceptsto draw the conclusion that because the ratio in this case is similar, the property division should also be considered inequitable.
The cases the husband cites do not hold that, as a matter of law, a property division can be rendered inequitable by mere mathematical ratios.[4] In fact, although the appellate courts of this State have reversed judgments on the basis that the division of marital property is disproportionate, "there is no rigid standard or mathematical formula on which a trial court must base its determination of alimony and the division of marital assets." Yohey v. Yohey, 890 So.2d 160, 164 (Ala.Civ. App.2004). "Even if a property division favors one party over the other, that is not, in and of itself, an abuse of discretion." Jordan v. Jordan, 547 So.2d 574, 576 (Ala.Civ.App.1989). See also Jenkins v. Jenkins, 781 So.2d 986, 989 (Ala.Civ. App.2000) ("The trial court's property division and its alimony award are required to be equitable, not equal.").
The Chief Justice concludes that the cases cited by the petitioner indicate "that a judgment dividing a marital estate in such disproportionate shares is inequitable and unsupportable on appellate review." 24 So.3d at 1096. Again, the cases cited by the husband do not hold that the disparity in the percentage of marital property awarded to each party is per se sufficient to show that a property division is inequitable. Instead, those cases explain that in *1094 dividing marital property the trial court undertakes a complex analysis of numerous factual components, including:
"`[T]he future prospects of the parties; their ages, health, and stations in life; the length of their marriage; the source, value and type of property owned; the standard of living to which the parties have become accustomed during the marriage and the potential for maintaining that standard; and, in appropriate situations, the conduct of the parties with reference to the cause of the divorce.'"
Adams v. Adams, 778 So.2d 825, 827 (Ala. Civ.App.2000) (quoting Bolton v. Bolton, 720 So.2d 929, 930 (Ala.Civ.App.1998)). One cannot make a proper property-division determination without resort to an analysis of these factual components, and they are wholly unaddressed in the husband's petition.
The husband has implied in his argument that the property division violates a proposition of law that is not discernible from the cited cases. The Chief Justice concludes, however, that this argument shows "with sufficient particularity" that the Court of Civil Appeals' decision, conflicts with the cases cited in the husband's petition and that "there are special and important reasons" requiring this Court to exercise its discretion and issue the writ. I respectfully disagree, especially in light of the complex factual analysis that under-pins each of the decisions in the cited cases.[5]
But this is only half the analysis this Court undertakes on preliminary examination of a petition for certiorari review. Once it is determined that the petition complies with the pleading requirements of Rule 39, this Court must also determine whether the petition illustrates a probability of merit. Rule 39(f), Ala. R.App. P. The Chief Justice does not undertake such an analysis in her dissent. I will now explain why I believe the petition also fails to show a probability of merit.
As stated above, a division of marital property in a divorce case "need not be equal, but must be graduated according to the particular circumstances of the case," including the respective fault of the parties. Crowe v. Crowe, 602 So.2d 441, 443 (Ala.Civ.App.1992). A trial court's property division is a fact-intensive analysis in which the trial court considers numerous factors, including "the source, value and type of property owned." Adams, 778 So.2d at 827. Under the ore tenus rule, the trial court's factual determination on these issues in a case in which it heard ore tenus evidence is presumed correct. Courtright v. Courtright, 757 So.2d 453, 456 (Ala.Civ.App.2000) (noting that, in an appeal challenging a division of marital property, "`[a] divorce judgment based on ore tenus evidence is presumed correct....'" (quoting O'Neal v. O'Neal, 678 So.2d 161, 164 (Ala.Civ.App.1996))). In such a case, the trial court's judgment will be reversed only if there was "a plain and palpable abuse of discretion," id., even if the property division "might appear disproportionate." Mangina v. Mangina, 585 So.2d 1383, 1386 (Ala.Civ.App.1991) (emphasis added). See also Dowdy v. Dowdy, 473 So.2d 1091, 1093 (Ala.Civ.App. 1985) (stating that the division of property in a divorce proceeding should be equitable, not necessarily equal, and that, after consideration of the equities, the division of property "`is a matter for the discretion *1095 of the trial court, and will not be disturbed on appeal except upon a showing of palpable abuse'" (quoting Kirk v. Kirk, 371 So.2d 54, 55 (Ala.Civ.App.1979))). Again, the husband does not address any of the factors relevant in dividing marital property, much less explain how, if the writ were to issue, this Court would find that the trial court had exceeded its discretion in dividing the property or that its factual determinations are plainly and palpably wrong.
Furthermore, it is clear from the husband's own statement of facts that the vast bulk of the marital estate consisted of funds held by the wife before the marriage or provided to the wife by her family. Specifically, the wife had an interest in the amount of approximately $637,152 in a trust account established by her parents "to distribute the family's wealth." The wife also held a "Morgan Stanley" account in her name that contained $690,702. According to the husband, the wife provided the "majority" of the family income from the interest on these accounts, which together total $1,327,854. As noted above, the trial court can consider, among other things, "the source" of the marital property, and it appears that a large portion of the property awarded to the wife was derived from sources outside the marriage. Adams, 778 So.2d at 827. The husband does not specifically contend in his petition, or provide a legal basis upon which to conclude, that he is entitled to any of these funds.
On the other hand, the facts describing the husband's income and any money he brought into the marriage are vague. He states that he was employed as a "paint contractor" and then as a realtor, but he also states that his monthly income was insufficient to pay the family's monthly bills. The husband does not indicate that he in any way contributed funds to the accounts held by the wife.
I also question how the husband and the Chief Justice can use the figure of $1,434,663 in determining what proportion of the marital estate was awarded to the wife. The facts indicate that during the marriage the wife purchased a farm with "her" money. Although the husband included the value of the farm$216,000in the total amount of the marital property awarded to the wife$1,434,663the husband also states that the wife, before the divorce, deeded the farm property to a trust for the benefit of her children. Additionally, the husband states in his petition that he did not claim an interest in two other parcels of property the wife owned; that said, one of the properties, valued at $54,000, was also included in computing the total award to the wife. For all that appears, most of the $1,434,663 figure the husband claims was awarded to the wife consisted of accounts she held before the marriage, funds given to the wife by her parents, or property the husband either did not claim he was entitled to or the wife no longer owned at the time of the divorce.
The facts before us, which are provided by the husband, show that the wife brought a great deal of wealth into the marriage and that she left the marriage with both an award of a great deal of money and a large debt.[6] The husband does not present an argument, much less authority, showing that if this Court were to issue the writ, he could overcome the presumption of correctness afforded the trial court's decision and show that he is entitled to any of these moneys. The certiorari petition raises more questions as to the merits of its own arguments than to the propriety of the property division and the Court of Civil Appeals' affirmance of *1096 the trial court's judgment. I see no conflict with prior caselaw, no probability of merit, no special and important reasons to issue the writ, and no need to exercise the Court's discretion to order the issuance of the writ. Therefore, I concur in denying the petition.
LYONS and STUART, JJ., concur.
COBB, Chief Justice (dissenting).
I respectfully dissent from the denial of the petition for a writ of certiorari filed by F. Scott Andrews, Jr., seeking review of a decision of the Court of Civil Appeals. Scott and Eva Sproull Andrews were married for approximately 10 years; they were divorced in April 2008. The trial court awarded Scott marital property valued at $35,200, or approximately 2.4 percent of the marital property, while it awarded Eva marital property valued at $1,434,663, or approximately 97.6 percent of the marital property. Scott appealed to the Court of Civil Appeals, which affirmed the trial court's judgment without a written opinion. Andrews v. Andrews (No. 2070809, February 6, 2009), ___ So.3d ___ (Ala.Civ.App.2009) (table).
In his petition to this Court, Scott argued that the decision of the Court of Civil Appeals conflicts with Kaufman v. Kaufman, 934 So.2d 1073 (Ala.Civ.App.2005), Adams v. Adams, 778.So.2d 825 (Ala.Civ. App.2000), and Cunningham v. Cunningham, 956 So.2d 1157 (Ala.Civ.App.2006). The majority of this Court concludes that Scott failed to state with particularly how a ratio in the division of marital property of 97.6 percent to.one party to 2.4 percent to the other conflicts with the aforementioned cases. I disagree. Each of the above cases indicates that a judgment dividing a marital estate in such disproportionate shares is inequitable and unsupportable on appellate review. I believe that Scott has stated the conflict with sufficient particularity for the members of this Court to comprehend the alleged conflict. I attach Scott's petition as an appendix to my dissent so that practitioners may understand how the majority of this Court is evaluating petitions for certiorari review in a hypertechnical manner.

APPENDIX
 IN THE SUPREME COURT
 OF ALABAMA
_______________________________________
 F. SCOTT ANDREWS, JR.,
 APPELLANT
 V.
 EVA SPROULL ANDREWS,
 APPELLEE
_______________________________________
ON APPEAL FROM THE CIRCUIT
COURT OF CALHOUN COUNTY,
 ALABAMA
 Civil Action No. DR XXXX-XXXXXX
_______________________________________
APPELLANT'S PETITION FOR WRIT
OF CERTIORARI TO THE ALABAMA
 COURT OF CIVIL APPEALS,
 Case No. 2070809,
 Decision Issued February 6, 2009
_______________________________________
 TRACI OWEN VELLA
 ATTORNEY FOR APPELLANT
 200 Office Park Drive
 Suite 216
Birmingham, AL 35223
(205) 868-1555
_______________________________________

*1097 PETITION FOR WRIT OF CERTIORARI TO THE ALABAMA COURT OF CIVIL APPEALS

Comes now the Appellant, Scott Andrews, and, pursuant to Rule 39 of the Alabama Rules of Appellate Procedure, brings this Petition for Writ of Certiorari, and as grounds therefore, states the following:
1. The Alabama Court of Civil Appeals issued a decision in this matter on February 6, 2009, which affirmed the decision of the trial court, with no opinion.
2. No opinion was issued by the Court of Civil Appeals in the decision of the Court, and therefore Rule (a)(1)(D)2 is applicable. The Opinion of the Court is attached hereto as "Exhibit A."
3. Since no statement of fact was made in the Court of Civil Appeals' Order, a Statement of Facts is attached hereto as "Exhibit B."
4. The decision of the trial court was in conflict with prior decisions of this Court as well as prior decisions of the Alabama Court of Civil Appeals.
(a) The decision of the trial court to award Appellant only 2% of the marital estate is grossly inequitable and this Court has consistently reversed decisions wherein one party is awarded a disproportionate portion of the marital estate. In Kaufman v. Kaufman, 934 So.2d 1073 (Ala.Civ.App.2005), this Court reversed a divorce decree where the husband received approximately 77% of the marital estate and the wife received 23%. An award of only 16% to one party was also found to be "so disproportionate as to be inequitable". Adams v. Adams, 778 So.2d 825 at 827 (Ala.Civ.App.2000).
And in a case where Wife was awarded only 13% of the parties' assets, the Alabama Court of Civil Appeals cited this Court in Kaufman v. Kaufman, supra, and Adams v. Adams, supra, in concluding the trial court's property division was inequitable. Cunningham v. Cunningham, 956 So.2d 1157 (Ala.Civ. App.2006).
(b) The trial court's award of primary custody to Appellee was also in conflict with Alabama precedent, which requires the court to consider: age and sex of the child; child's emotional, social, moral, material, and educational needs; and the characteristics of those seeking custody, including their age, character, stability, mental and physical health, and their respective home environments. Kovakas v. Kovakas, Ala.Civ.App., Case Numbers 2050780 and 2060229, May 23, 2008, citing Ex parte Devine, 898 So.2d at 696-97.
There was clear testimony that Appellant had been the child's primary care giver, whereas the Appellee primarily delegated parental responsibilities and made poor decisions while the child was in her care. R. 498, 144-6, 110, 131, 505-12,137, 416,146,169-70.
(c) Appellant did not receive his constitutional requirement of due process prior to the Court requiring him to pay rent on the marital residence. A hearing was set, but no evidence was heard, and the judge made a decision based on "what evidence might be offered...." Appellant, and in fact any litigant, has the right to "notice, a hearing according to that notice, and a judgment entered in accordance with such notice and hearing." Hosey v. Lowery, 911 So.2d 15 (Ala..Civ.App.2005), citing Ex parte Rice, 265 Ala. 454, 458, 92 So.2d 16, 19 (1957).
Wherefore, premises considered, the Appellant respectfully requests that this Honorable *1098 Court issue a Writ of Certiorari to the Alabama Court of Civil Appeals.
 S/ Traci Owen Vella
 TRACI OWEN VELLA (VEL002)
 Attorney for Appellant
 200 Office Park Drive
 Suite 216
 Birmingham, AL 35223
 (205) 868-1555

CERTIFICATE OF SERVICE
I certify that I have on this the 20th day of February, 2009, served a copy of the foregoing Petition on counsel of record for the Appellee as follows:
 Arthur Fite
 The Fite Law Firm
 P.O. Box 363
 Anniston, Alabama 36202
 S/ Traci Owen Vella
 TRACI OWEN VELLA
 "Exhibit A"
 REL: 02/06/2009
 STATE OF ALABAMAJUDICIAL
 DEPARTMENT
 THE COURT OF CIVIL APPEALS
 OCTOBER TERM, 2008-2009
2070809
F. Scott Andrews, Jr. v. Eva Sproull Andrews.
Appeal from Calhoun Circuit Court (DR-07-900007).
BRYAN, Judge.
AFFIRMED. NO OPINION.
See Rule 53(a)(1) and (a)(2)(), Ala. R.App. P.; Rule 28(a)(10), Ala. R.App. P.; State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 821 (Ala.2005); Ex parte Fann, 810 So.2d 631, 633 (Ala.2001); Ex parte Byars, 794 So.2d 345, 347 (Ala.2001); Ex parte Veazey, 637 So.2d 1348, 1349 (Ala. 1993); Ex parte Devine, 398 So.2d 686, 696-97 (Ala.1981); Amberson v. Long, 998 So.2d 1078, 1079 (Ala.Civ.App.2008); Mullis v. Mullis, 994 So.2d 934, 941-42 (Ala. Civ.App.2007); Leopold v. Leopold, 955 So.2d 1031, 1034 (Ala.Civ.App.2006); McClelland v. McClelland, 841 So.2d 1264, 1269 (Ala.Civ.App.2002); Courtright v. Courtright, 757 So.2d 453, 456 (Ala.Civ. App.2000); Allegro v. State ex rel. Lett, 747 So.2d 913, 914 (Ala.Civ.App.1999); Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996); Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996); Driver v. Hice, 618 So.2d 129, 132 (Ala.Civ.App. 1993); Crowe v. Crowe, 602 So.2d 441, 443 (Ala.Civ.App.1992); Mangina v. Mangina, 585 So.2d 1383, 1386 (Ala.Civ.App.1991); Jenkins v. Landmark Chevrolet, Inc., 575 So.2d 1157, 1161 (Ala.Civ.App.1991); Sims v. Sims, 515 So.2d 1, 2 (Ala.Civ.App.1987); Dowdy v. Dowdy, 473 So.2d 1091, 1093 (Ala.Civ.App.1985); and Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ. App.1981).
The appellant's request for an attorney's fee on appeal is denied.
Thompson, P.J., and Pittman, Thomas, and Moore, JJ., concur.

"EXHIBIT B"

STATEMENT OF FACTS
This is a divorce case involving the custody of one child and the division of marital property. The parties married in 1999 and had one child born of the marriage, [H.A.] .... R. 4 and 6.
The marriage was Wife's fourth marriage and Husband's first. R. 116, 389.
During the marriage, Wife only minimally worked outside the home as an artist. R. 7, 100. Husband worked as a paint contractor during the first years of the marriage, and then obtained his license *1099 and became a realtor in 2004. R. 385, 388. Wife testified she provided the majority of the family's income during the marriage. R. 267. Wife's income came from investments which originated from gifts from her parents. R. 8.
Husband testified he was the primary caretaker for [H.A.]. Contrary to Wife's very general description of the role of the primary caretaker, Husband specifically testified that, when [H.A] was a baby, he fed him, changed him, gave him bottles, and frequently stayed at home with him. R. 492. Later, he took [H.A.] to Mom's Day Out, signed him up for school each year, bought school supplies, took him to the pediatrician, and took him to work with him. R. 495-7. Husband coaches soccer, participates in tennis, golf, and swimming with [H.A.]. He takes him for haircuts, and attends all field trips, teachers meeting, and school events. R. 500-2. Wife conceded Husband was a good father. R. 41.
Although Wife did not work outside the home, while Husband worked, a nanny or housekeeper frequently looked after [H.A.] during the day. R. 498. Wife admitted drinking and driving while [H.A.] was in the car. R. 110. Husband also testified that Wife: missed a field trip with [H.A.] after promising to attend; failed to take him to his last day of Bible school; chose not to attend his very first day of school (Husband took him); missed a parent teacher conference; took [H.A.] to school while in her pajamas and forgot she was supposed to attend a field trip that day (Husband went instead); took him on a Tour of Homes after he was home sick for two days; curses in front of [H.A.]; and took him to school in 28 degree weather without a coat. R. 505-12.
Wife also left [H.A.] with her ex-husband on multiple occasions, including overnight, and the child slept with her ex-husband. R. 144, 146, 169-70.
Between the parties' separation and the date of divorce, they had split time with [H.A.] equally. R. 302.
An audio tape was played for the Court wherein Wife cursed Husband, allegedly in the presence of [H.A.]. R. 32, 118. Husband's employer had overheard Wife cursing Husband over the telephone while he was at work. R. 429-30. Wife's maid testified Wife "screamed" and "hollered" and that the child screamed back at her. R. 355. Testimony that Wife was physically abusive to Husband was not refuted: she kicked him in the back ( R. 393), gave him a black eye and a busted lip (R. 396), pushed him into a Tiffany lamp, breaking it while in the presence of the child (R. 114), and a witness testified he saw scratches made by Wife on Husband's chest after overhearing them arguing. R. 463-1.

PROPERTY
Wife owned an interest in Sproull Investments, Inc., a company created by her parents to distribute the family's wealth. R. 8. Wife started receiving her interests in 2002 (during the marriage) with annual increases each year thereafter. Wife's estimated value of that interest on December 31, 2007 was $637,152, but she provided a value of shares "based on estimated value due to decline in market" which was $557,035. Plaintiffs Exhibit 2.
Wife had a checking account in which she kept an average balance of $25,000, used during the marriage, and kept a balance in it for "security". R. 89-90.
Another account in Wife's name but used throughout the marriage was a Morgan Stanley account. Wife admitted she consistently took interest and dividends from the account for the parties to live on during the marriage. R. 14-5, 53, 98. *1100 The balance of the account at the time of the divorce was $690,000, though she owed $210,000 on the margin balance, for a net value of 480,000. R. 238.
The parties lived together before and during their marriage at 904 Forest Lane [hereinafter "Forest Lane"]. R. 14, 389. Wife bought the house in 1995 for $63,000, and after the parties married, Wife's parents paid off the mortgage on the home. R. 75-7. The parties sold the home in 2002, netting $68,000. Wife testified she thought of the home as hers and Husband's, and he signed the settlement forms at the closing because they were married. R.78.
Before selling Forest Lane, Wife's parents took them to view a larger home, and her parents told them they would buy the house for them. R. 397. Wife testified her mother wrote a check for the total sales price of $206,000 in 2001. R. 16-17. She said the house was initially a gift to both she and Husband. R. 82.
Husband alleges Wife's brother thereafter became upset that their parents had purchased a home for them, which he believed was unfair to the rest of the family and thus Wife thereafter signed a note and a mortgage on the "loan." Wife confirmed this description of events and added that her brother ["Jim"] told her ex-husband ["Vaughn Jr."] to draw up the documents for the loan. R. 82-3.
Wife's CPA testified a replacement note was prepared in 2002 to lower the interest rate on the loan and the total amt owed at that time was $194,000, although no witness for Wife could find a signed copy of the replacement note. R. 209. The CPA prepared the replacement note, but he did not know if Wife ever signed it. R. 232. During the trial, no signed copy was ever presented. Wife paid the $68,000 proceeds from the sale of the Forest Lane home on the loan (R. 18), as well as $14,000 which was paid in 2004, while another of Wife's Complaints for Divorce against Husband was pending. R. 20, 83. Wife believed the present value of the home to be $215,000 at the time of trial, and she believed the amount owed on the loan from her parents was $165,000. R. 55. She admitted she was not obligated to make payments on the loan, as it was a demand note. R. 20.
Following the parties' separation, Wife left the home, which had been the marital residence. R. 19, 284, 413. Husband testified he had no where else to live with [H.A.], that he could not afford to pay Wife rent for the marital residence because his expenses (including the family's health insurance, which cost him $760 per month, and all the utilities at the residence) exceeded his income. R. 416-120.
The parties also owned a farm with ten acres [hereinafter referred to as "Hidden Hills"], which was purchased during the marriage for $140,000. Wife wrote a check for the property from her Morgan Stanley margin account. R. 21-3. The parties found the property together, but put it in Wife's name because her family traditionally bought property "in the woman's name in case the man gets sued." They each testified they purchased the property as an investment. R. 85-6, 402. Husband found a renter for one of the two houses on the property, did various work on the property, and the parties used the other house as their marital residence for 6-8 months. R. 87-8, 403-11. Wife kept the rent and spent it for the family, including buying groceries. R. 88. The couple entertained guests at the property throughout the marriage. R. 92. Husband spent his money making repairs on the property, and he lived on the property during the parties' separation in 2005. R. 405.
*1101 Wife, without Husband's knowledge or consent, deeded the property to a trust for the benefit of her sons [V.] and [H.A.]. R. 25-7, 85-86, 409. (Plaintiffs Exhibits 10 and 17). Wife also rented out the other house on the property after the separation, which produced $900 per month. R. 27, 414. Immediately after Husband learned of this transfer without his consent, Wife filed the final and current divorce. R. 93-4, 410.
Wife made her ex-husband Vaughn Jr. the trustee of the Trust. R. 162. Wife believed the fair market value of the property was $160,000 at the time it was deeded to the trust. R. 275. However, Husband testified an appraisal showed the value was actually $216,000. R. 413.
Wife had two properties in which Husband made no claims, though they were listed as her separate property. R. 95, 53.
Husband submitted a list of personal property, which is within Plaintiffs Exhibit 4. Husband R. 422. The Court then gave Wife the opportunity to review Husband's list and mark the items to which she objected. Wife then marked said items with a letter "E". R. 423. In the Final Decree, the Court awarded Husband several pieces of personal property, and awarded each party all personal property then in his or her possession, with the exception of the items specifically awarded to Husband. C. 100-1. Wife, in her response to Husband's Motion to Alter, Amend or Vacate, "suggested" the Court amend the Final Decree, paragraph 11 (concerning personal property) with her own drafted paragraph. C. 119. Thereafter, Wife filed a Motion to Alter, Amend or Vacate and suggested another property division, attaching a new exhibit to the Motion, listing property Wife wanted. This exhibit had not been admitted during the trial of this matter. C. 125-139.
On April 17, 2008, the Court issued an Amended Judgment following the argument of counsel. Then on April 24, 2008, Wife submitted a "Proposed Order." C. 139-140. Husband filed a Motion to Strike said Proposed Order as not timely filed (C. 141-2), and the Court denied said Motion to Strike on May 2, 2008 (C. 143), the same day the Court issued its final Amended Judgment, wherein the Court amended the Order pursuant to Wife's request. C. 145.
The trial court divided property in the following manner:

 HUSBAND
 Auto-Nissan Pathfinder $ 14,000
 Equity in Glenwood Terrace $ 30,200
 Equity in Hidden Hills $ 5,000
 Debt to Southern States Bank ($ 14,000)
 TOTAL VALUE $ 35,200
 WIFE
 Auto-2004 Volvo $ 23,000
 Glenwood Terrace $ 215,000
 Morgan Stanley Account $ 690,702
 Margin Debt ($ 210,440)
 Wachovia Account $ 25,000
 Hidden Hills Farm[1] $ 216,000
 Sproull Investment, LLC Interest $ 637,152
 Loan from Sproull Investments ($ 165,751)
 Office Building, 24 East 12th St. $ 54,000
 Farmers and Merchants Loan ($ 50,000)
 Interest in Eufala, AL Property value unknown
 TOTAL VALUE $1,434,663

C. 98-102.
The court also awarded primary custody of [H.A.] to Appellee. C. 98-102.
NOTES
[1] The wife was also awarded custody of the couple's minor child.
[2] The Chief Justice has attached a copy of the husband's petition to her dissenting opinion. It is unfortunate that the details of the parties' divorce, custody dispute, and private finances are now to be unnecessarily preserved for public view in the pages of the Southern Reporter. That said, I must also discuss some of these facts in order to respond to the Chief Justice's dissent.
[3] It appears that this portion of the petition was taken verbatim from a filing in the Court of Civil Appeals, because the husband refers to the Court of Civil Appeals as "this Court."
[4] In fact, Kaufman v. Kaufman, 934 So.2d 1073 (Ala.Civ.App.2005), holds that the judgment dividing the property was to be reversed, in part, because the trial court improperly considered that some assets were not marital assets and improperly considered the parties' settlement negotiations in making its property division. In Adams v. Adams, 778 So.2d 825 (Ala.Civ.App.2000), the trial court denied a party an equitable share of the marital assets solely on the basis that, in its opinion, the party would likely `mismanage the assets. And Cunningham v. Cunningham, 956 So.2d 1157 (Ala.Civ.App.2006), while acknowledging the ratios of the awards in Adams and Kaufman as inequitable, reversed a judgment dividing property because the property division left a disabled party, who was awarded no alimony, with insufficient means to meet her basic expenses. As discussed below, there are no similar facts in the instant case.
[5] I believe that to properly state a conflict with prior caselaw as grounds for review the husband would need to state the factors for determining a property division and then show how the specific facts of this case relate to those factors and indicate that the property division he is challenging is inequitable.
[6] The trial court also required the wife to assume approximately $426,191 in debt.
[1] Though the Court did not award Wife this property, the Court awarded Husband $5,000 of equity from the property, and failed to set aside Wife's transfer of the property to the Trusts she created.