COBB, Chief Justice
(dissenting).
I respectfully dissent from the denial of the petition for a writ of certiorari filed by F. Scott Andrews, Jr., seeking review of a decision of the Court of Civil Appeals. Scott and Eva Sproull Andrews were married for approximately 10 years; they were divorced in April 2008. The trial court awarded Scott marital property valued at $35,200, or approximately 2.4 percent of the marital property, while it awarded Eva marital property valued at $1,434,663, or approximately 97.6 percent of the marital property. Scott appealed to the Court of Civil Appeals, which affirmed the trial court’s judgment without a written opinion. Andrews v. Andrews (No. 2070809, February 6, 2009), — So.3d - (Ala.Civ.App.2009) (table).
In his petition to this Court, Scott argued that the decision of the Court of Civil Appeals conflicts with Kaufman v. Kaufman, 934 So.2d 1073 (Ala.Civ.App.2005), Adams v. Adams, 778 So.2d 825 (Ala.Civ.App.2000), and Cunningham v. Cunningham, 956 So.2d 1157 (Ala.Civ.App.2006). The majority of this Court concludes that Scott failed to state with particularly how a ratio in the division of marital property of 97.6 percent to one party to 2.4 percent to the other conflicts with the aforementioned eases. I disagree. Each of the above cases indicates that a judgment dividing a marital estate in such disproportionate shares is inequitable and unsupportable on appellate review. I believe that Scott has stated the conflict with sufficient particularity for the members of this Court to comprehend the alleged conflict. I attach Scott’s petition as an appendix to my dissent so that practitioners may understand how the majority of this Court is evaluating petitions for certiorari review in a hypertechnical manner.
APPENDIX [To CHIEF JUSTICE’S DISSENT]
[[Image here]]

*1097
PETITION FOR WRIT OF CERTIO-RARI TO THE ALABAMA COURT OF CIVIL APPEALS

Comes now the Appellant, Scott Andrews, and, pursuant to Rule 39 of the Alabama Rules of Appellate Procedure, brings this Petition for Writ of Certiorari, and as grounds therefore, states the following:
1. The Alabama Court of Civil Appeals issued a decision in this matter on February 6, 2009, which affirmed the decision of the trial court, with no opinion.
2. No opinion was issued by the Court of Civil Appeals in the decision of the Court, and therefore Rule (a)(l)(D)2 is applicable. The Opinion of the Court is attached hereto as “Exhibit A.”
8. Since no statement of fact was made in the Court of Civil Appeals’ Order, a Statement of Facts is attached hereto as “Exhibit B.”
4. The decision of the trial court was in conflict with prior decisions of this Court as well as prior decisions of the Alabama Court of Civil Appeals.
(a)The decision of the trial court to award Appellant only 2% of the marital estate is grossly inequitable and this Court has consistently reversed decisions wherein one party is awarded a disproportionate portion of the marital estate. In Kaufman v. Kaufman, 934 So.2d 1073 (Ala.Civ.App.2005), this Court reversed a divorce decree where the husband received approximately 77% of the marital estate and the wife received 23%. An award of only 16% to one party was also found to be “so disproportionate as to be inequitable”. Adams v. Adams, 778 So.2d 825 at 827 (Ala.Civ.App.2000).
And in a case where Wife was awarded only 13% of the parties’ assets, the Alabama Court of Civil Appeals cited this Court in Kaufman v. Kaufman, supra, and Adams v. Adams, supra, in concluding the trial court’s property division was inequitable. Cunningham v. Cunningham, 956 So.2d 1157 (Ala.Civ.App.2006).
(b) The trial court’s award of primary custody to Appellee was also in conflict with Alabama precedent, which requires the court to consider: age and sex of the child; child’s emotional, social, moral, material, and educational needs; and the characteristics of those seeking custody, including their age, character, stability, mental and physical health, and their respective home environments. Kovakas v. Kovakas, Ala.Civ.App., Case Numbers 2050780 and 2060229, May 23, 2008, citing Ex parte Devine, 398 So.2d at 696-97.
There was clear testimony that Appellant had been the child’s primary care giver, whereas the Appellee primarily delegated parental responsibilities and made poor decisions while the child was in her care. R. 498, 144-6, 110, 131, 505-12,137, 416,146,169-70.
(c) Appellant did not receive his constitutional requirement of due process prior to the Court requiring him to pay rent on the marital residence. A hearing was set, but no evidence was heard, and the judge made a decision based on “what evidence might be offered....” Appellant, and in fact any litigant, has the right to “notice, a hearing according to that notice, and a judgment entered in accordance with such notice and hearing.” Hosey v. Lowery, 911 So.2d 15 (Ala..Civ.App.2005), citing Ex parte Rice, 265 Ala. 454, 458, 92 So.2d 16, 19 (1957).
Wherefore, premises considered, the Appellant respectfully requests that this Hon *1098 orable Court issue a Writ of Certiorari to the Alabama Court of Civil Appeals.
S/ Traci Owen Vella
TRACI OWEN VELLA (VEL002)
Attorney for Appellant
200 Office Park Drive Suite 216 Birmingham, AL 35223 (205) 868-1555
CERTIFICATE OF SERVICE
I certify that I have on this the 20th day of February, 2009, served a copy of the foregoing Petition on counsel of record for the Appellee as follows:
Arthur Fite The Fite Law Firm P.O. Box 363 Anniston, Alabama 36202
S/ Traci Owen Vella
TRACI OWEN VELLA
“Exhibit A”
REL: 02/06/2009
STATE OF ALABAMA — JUDICIAL DEPARTMENT
THE COURT OF CIVIL APPEALS
OCTOBER TERM[, 2008-2009
2070809
F. Scott Andrews, Jr. v. Eva Sproull Andrews.
Appeal from Calhoun Circuit Court (DR-07-900007).
BRYAN, Judge.
AFFIRMED. NO OPINION.
See Rule 53(a)(1) and (a)(2)(), Ala. R.App. P.; Rule 28(a)(10), Ala. R.App. P.; State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 821 (Ala.2005); Ex parte Fann, 810 So.2d 631, 633 (Ala.2001); Ex parte Byars, 794 So.2d 345, 347 (Ala.2001); Ex parte Veazey, 637 So.2d 1348, 1349 (Ala.1993); Ex parte Devine, 398 So.2d 686, 696-97 (Ala.1981); Amberson v. Long, 998 So.2d 1078, 1079 (Ala.Civ.App.2008); Mullis v. Mullis, 994 So.2d 934, 941-42 (Ala.Civ.App.2007); Leopold v. Leopold, 955 So.2d 1031, 1034 (Ala.Civ.App.2006); McClelland v. McClelland, 841 So.2d 1264, 1269 (Ala.Civ.App.2002); Courtright v. Courtright, 757 So.2d 453, 456 (Ala.Civ.App.2000); Allegro v. State ex rel. Lett, 747 So.2d 913, 914 (Ala.Civ.App.1999); Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996); Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996); Driver v. Hice, 618 So.2d 129, 132 (Ala.Civ.App.1993); Crowe v. Crowe, 602 So.2d 441, 443 (Ala.Civ.App.1992); Mangina v. Mangina, 585 So.2d 1383, 1386 (Ala.Civ.App.1991); Jenkins v. Landmark Chevrolet, Inc., 575 So.2d 1157, 1161 (Ala.Civ.App.1991); Sims v. Sims, 515 So.2d 1, 2 (Ala.Civ.App.1987); Dowdy v. Dowdy, 473 So.2d 1091, 1093 (Ala.Civ.App.1985); and Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ.App.1981).
The appellant’s request for an attorney’s fee on appeal is denied.
Thompson, P.J., and Pittman, Thomas, and Moore, JJ., concur.
“EXHIBIT B”
STATEMENT OF FACTS
This is a divorce case involving the custody of one child and the division of marital property. The parties married in 1999 and had one child born of the marriage, [H.A.] .... R. 4 and 6.
The marriage was Wife’s fourth marriage and Husband’s first. R. 116, 389.
During the marriage, Wife only minimally worked outside the home as an artist. R. 7, 100. Husband worked as a paint contractor during the first years of the marriage, and then obtained his license *1099 and became a realtor in 2004. R. 385, 888. Wife testified she provided the majority of the family’s income during the marriage. R. 267. Wife’s income came from investments which originated from gifts from her parents. R. 8.
Husband testified he was the primary caretaker for [H.A.]. Contrary to Wife’s very general description of the role of the primary caretaker, Husband specifically testified that, when [H.A.] was a baby, he fed him, changed him, gave him bottles, and frequently stayed at home with him. R. 492. Later, he took [H.A.] to Mom’s Day Out, signed him up for school each year, bought school supplies, took him to the pediatrician, and took him to work with him. R. 495-7. Husband coaches soccer, participates in tennis, golf, and swimming with [H.A.], He takes him for haircuts, and attends all field trips, teachers meeting, and school events. R. 500-2. Wife conceded Husband was a good father. R. 41.
Although Wife did not work outside the home, while Husband worked, a nanny or housekeeper frequently looked after [H.A.] during the day. R. 498. Wife admitted drinking and driving while [H.A.] was in the car. R. 110. Husband also testified that Wife: missed a field trip with [H.A.] after promising to attend; failed to take him to his last day of Bible school; chose not to attend his very first day of school (Husband took him); missed a parent teacher conference; took [H.A.] to school while in her pajamas and forgot she was supposed to attend a field trip that day (Husband went instead); took him on a Tour of Homes after he was home sick for two days; curses in front of [H.A.]; and took him to school in 28 degree weather without a coat. R. 505-12.
Wife also left [H.A.] with her ex-husband on multiple occasions, including overnight, and the child slept with her ex-husband. R. 144,146,169-70.
Between the parties’ separation and the date of divorce, they had split time with [H.A.] equally. R. 302.
An audio tape was played for the Court wherein Wife cursed Husband, allegedly in the presence of [H.A.], R. 32, 118. Husband’s employer had overheard Wife cursing Husband over the telephone while he was at work. R. 429-30. Wife’s maid testified Wife “screamed” and “hollered” and that the child screamed back at her. R. 355. Testimony that Wife was physically abusive to Husband was not refuted: she kicked him in the back ( R. 393), gave him a black eye and a busted lip (R. 396), pushed him into a Tiffany lamp, breaking it while in the presence of the child (R. 114), and a witness testified he saw scratches made by Wife on Husband’s chest after overhearing them arguing. R. 463-4.

PROPERTY

Wife owned an interest in Sproull Investments, Inc., a company created by her parents to distribute the family’s wealth. R. 8. Wife started receiving her interests in 2002 (during the marriage) with annual increases each year thereafter. Wife’s estimated value of that interest on December 31, 2007 was $637,152, but she provided a value of shares “based on estimated value due to decline in market” which was $557,035. Plaintiffs Exhibit 2.
Wife had a checking account in which she kept an average balance of $25,000, used during the marriage, and kept a balance in it for “security”. R. 89-90.
Another account in Wife’s name but used throughout the marriage was a Morgan Stanley account. Wife admitted she consistently took interest and dividends from the account for the parties to live on during the marriage. R. 14-5, 53, 98. *1100 The balance of the account at the time of the divorce was $690,000, though she owed $210,000 on the margin balance, for a net value of 480,000. R. 238.
The parties lived together before and during their marriage at 904 Forest Lane [hereinafter “Forest Lane”]. R. 14, 389. Wife bought the house in 1995 for $63,000, and after the parties married, Wife’s parents paid off the mortgage on the home. R. 75-7. The parties sold the home in 2002, netting $68,000. Wife testified she thought of the home as hers and Husband’s, and he signed the settlement forms at the closing because they were married. R. 78.
Before selling Forest Lane, Wife’s parents took them to view a larger home, and her parents told them they would buy the house for them. R. 397. Wife testified her mother wrote a check for the total sales price of $206,000 in 2001. R. 16-17. She said the house was initially a gift to both she and Husband. R. 82.
Husband alleges Wife’s brother thereafter became upset that their parents had purchased a home for them, which he believed was unfair to the rest of the family and thus Wife thereafter signed a note and a mortgage on the “loan.” Wife confirmed this description of events and added that her brother [“Jim”] told her ex-husband [“Vaughn Jr.”] to draw up the documents for the loan. R. 82-3.
Wife’s CPA testified a replacement note was prepared in 2002 to lower the interest rate on the loan and the total amt owed at that time was $194,000, although no witness for Wife could find a signed copy of the replacement note. R. 209. The CPA prepared the replacement note, but he did not know if Wife ever signed it. R. 232. During the trial, no signed copy was ever presented. Wife paid the $68,000 proceeds from the sale of the Forest Lane home on the loan (R. 18), as well as $14,000 which was paid in 2004, while another of Wife’s Complaints for Divorce against Husband was pending. R. 20, 83. Wife believed the present value of the home to be $215,000 at the time of trial, and she believed the amount owed on the loan from her parents was $165,000. R. 55. She admitted she was not obligated to make payments on the loan, as it was a demand note. R. 20.
Following the parties’ separation, Wife left the home, which had been the marital residence. R. 19, 284, 413. Husband testified he had no where else to live with [H.A.], that he could not afford to pay Wife rent for the marital residence because his expenses (including the family’s health insurance, which cost him $760 per month, and all the utilities at the residence) exceeded his income. R. 416-420.
The parties also owned a farm with ten acres [hereinafter referred to as “Hidden Hills”], which was purchased during the marriage for $140,000. Wife wrote a check for the property from her Morgan Stanley margin account. R. 21-3. The parties found the property together, but put it in Wife’s name because her family traditionally bought property “in the woman’s name in case the man gets sued.” They each testified they purchased the property as an investment. R. 85-6, 402. Husband found a renter for one of the two houses on the property, did various work on the property, and the parties used the other house as their marital residence for 6-8 months. R. 87-8, 403-11. Wife kept the rent and spent it for the family, including buying groceries. R. 88. The couple entertained guests at the property throughout the marriage. R. 92. Husband spent his money making repairs on the property, and he lived on the property during the parties’ separation in 2005. R. 405.
*1101 Wife, without Husband’s knowledge or consent, deeded the property to a trust for the benefit of her sons [V.] and [H.A.], R. 25-7, 85-86, 409. (Plaintiffs Exhibits 10 and 17). Wife also rented out the other house on the property after the separation, which produced $900 per month. R. 27, 414. Immediately after Husband learned of this transfer without his consent, Wife filed the final and current divorce. R. 93-4, 410.
Wife made her ex-husband Vaughn Jr. the trustee of the Trust. R. 162. Wife believed the fair market value of the property was $160,000 at the time it was deeded to the trust. R. 275. However, Husband testified an appraisal showed the value was actually $216,000. R. 413.
Wife had two properties in which Husband made no claims, though they were listed as her separate property. R. 95, 53.
Husband submitted a list of personal property, which is within Plaintiffs Exhibit 4. Husband R. 422. The Court then gave Wife the opportunity to review Husband’s list and mark the items to which she objected. Wife then marked said items with a letter “E”. R. 423. In the Final Decree, the Court awarded Husband several pieces of personal property, and awarded each party all personal property then in his or her possession, with the exception of the items specifically awarded to Husband. C. 100-1. Wife, in her response to Husband’s Motion to Alter, Amend or Vacate, “suggested” the Court amend the Final Decree, paragraph 11 (concerning personal property) with her own drafted paragraph. C. 119. Thereafter, Wife filed a Motion to Alter, Amend or Vacate and suggested another property division, attaching a new exhibit to the Motion, listing property Wife wanted. This exhibit had not been admitted during the trial of this matter. C. 125-139.
On April 17, 2008, the Court issued an Amended Judgment following the argument of counsel. Then on April 24, 2008, Wife submitted a “Proposed Order.” C. 139-140. Husband filed a Motion to Strike said Proposed Order as not timely filed (C. 141-2), and the Court denied said Motion to Strike on May 2, 2008 (C. 143), the same day the Court issued its final Amended Judgment, wherein the Court amended the Order pursuant to Wife’s request. C. 145.
The trial court divided property in the following manner:
HUSBAND
Auto-Nissan Pathfinder $ 14,000
Equity in Glenwood Terrace $ 30,200
Equity in Hidden Hills $ 5,000
Debt to Southern States Bank ($ 14,000)
TOTAL VALUE $ 35,200
WIFE
Auto-2004 Volvo $ 23,000
Glenwood Terrace $ 215,000
Morgan Stanley Account $ 690,702
Margin Debt ($ 210,440)
Wachovia Account $ 25,000
Hidden Hills Farm[1] $ 216,000
Sproull Investment, LLC Interest $ 637,152
Loan from Sproull Investments ($ 165,751)
Office Building, 24 East 12th St. Farmers and Merchants Loan $ 54,000 ($ 50,000)
Interest in Eufala, AL Property value unknown
TOTAL VALUE $1,434,663
C. 98-102.
The court also awarded primary custody of [H.A.] to Appellee. C. 98-102.

. Though the Court did not award Wife this property, the Court awarded Husband $5,000 of equity from the property, and failed to set aside Wife’s transfer of the property to the Trusts she created.